United States District Court
Northern District of California

1

2

3

4            UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7    MECHIEL TAYLOR,                          Case No.  23-cv-04121-DMR

8                    Plaintiff,

9           v.                                **OMNIBUS ORDER ON MOTIONS TO
                                              DISMISS**
10   SAN FRANCISCO SHERIFF'S                   Re: Dkt. Nos. 18, 20, 24, 41, 50, 64
     DEPARTMENT, et al.,
11
                     Defendants.
12

13           Plaintiff Mechiel Taylor, representing herself, filed a first amended complaint against

14   sixteen defendants[1] alleging civil rights and state tort law claims relating to incidents that

15   happened during her employment with Five Keys Schools and Programs ("Five Keys").  [Docket

16   No. 13 (First Amended Complaint, "FAC").]  Eleven[2] of the defendants now move to dismiss in

17   six different motions:

18           -   Superior Court of California Contra Costa County ("Superior Court") [Docket No. 18];

19           -   United Educators of San Francisco ("UESF") and Matthew Milton (collectively "UESF

20               Defendants") [Docket No. 20];

21           -   City and County of San Francisco ("CCSF") and San Francisco Sheriff's Department

22               ("SFSD") (collectively "San Francisco Defendants") [Docket No. 24];

23           -   County of Alameda, Alameda County Sheriff's Office ("ACSO"), and Nicole

24

25   _____

26   [1] The complaint includes the City of San Ramon as a seventeenth defendant.  Plaintiff has since
     voluntarily dismissed the City of San Ramon as a party.

27   [2] Five of the defendants—Five Keys, Melanie Fukuhara, Steve Good, Lisa Haynes, and Mary
     Vigil, collectively "Five Keys Defendants"—filed an answer to the complaint instead of moving
28   to dismiss.  [Docket No. 47.]  This order does not discuss the claims Plaintiff asserts against the
     Five Keys Defendants.

1    Tremaine Allen (collectively "Alameda Defendants") [Docket No. 41];

2    -   State of California ("California") [Docket No. 50]; and

3    -   Gregory Ahern and Daniel Brodie [Docket No. 64].

4    Plaintiff opposes all motions.  [Docket Nos. 54, 55, 59, 70, 71, 72.]  The court held a hearing on

5    March 28, 2024.  [Docket No. 98.]  For the following reasons, the motions are granted.

6    ## I.   BACKGROUND

7    ### A.   Statement of Facts

8    Plaintiff makes the following allegations in the FAC, which the court takes as true for

9    purposes of this motion.[3]  Plaintiff is a Black woman who resides in Contra Costa County.  FAC

10   ¶¶ 7, 47.  On July 20, 2016, Five Keys hired Plaintiff as a teacher for Inmate Services at Santa Rita

11   Jail in Alameda County.  *Id.* at ¶ 24.  On September 13, 2016, the County of Alameda approved a

12   contract for educational services in Alameda County jails provided by Five Keys which would be

13   valid from September 14, 2016 to September 13, 2019.  *Id.* at ¶¶ 25-26.  Gregory Ahern, a sheriff

14   and coroner employed by ACSO, signed the contract.  *Id.* at ¶¶ 12, 26.

15   In 2018, Nicole Tremaine Allen, a deputy sheriff employed by ACSO and a Black woman,

16   began working in Inmate Services at Santa Rita Jail.  *Id.* at ¶¶ 10, 27, 47.  Around December 5,

17   2021, Allen "engaged in an unreasonable search, unreasonable seizure, and a continuing seizure of

18   the Plaintiff and her property at the Plaintiff's residence."  *Id.* at ¶ 29.  On June 12, 2022, Plaintiff

19   made a formal complaint of abuse and stalking against Allen with Five Keys and requested unpaid

20   leave under the Family and Medical Leave Act and a temporary restraining order against Allen.

21   *Id.* at ¶¶ 30-31.  On June 17, 2022, Five Keys notified Plaintiff that they would be performing a

22   preliminary workplace harassment investigation.  *Id.* at ¶ 44.  Plaintiff alleges that Five Keys then

23   began "intimidating, discriminating, and retaliating against Plaintiff for filing the formal

24   complaint" and began "evading Plaintiff and refused Plaintiff's return to worksite."  *Id.* at ¶¶ 45-

25   46.  Five Keys restricted Plaintiff's access to coworkers "through isolation and deactivation of

26

27   _____

28   [3] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
     of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
     (per curiam) (citation omitted).

United States District Court
Northern District of California

1    work email account." *Id.* at ¶ 51.  Plaintiff believes she was excluded from the Five Keys

2    Harassment and Sexual Misconduct Policy under Title IX.  *Id.* at ¶¶ 47-48.

3            Also on June 17, 2022, Plaintiff filed and was granted a temporary civil harassment

4    restraining order against Allen by Judge Judith Craddick of the Superior Court of California

5    Contra Costa County ("Superior Court").  *Id.* at ¶ 39.  The restraining order was in effect through

6    August 9, 2022.  *Id.* at ¶ 40.  Plaintiff requested a permanent restraining order and submitted

7    supporting evidence, but Judge Craddick denied the permanent order on August 9, 2022.  *Id.* at ¶

8    41-42.  In her order, Judge Craddick stated: "You felt things were happening which I don't think

9    were intended by Ms. Allen."  *Id.* at ¶ 42.

10           On June 21, 2022, Plaintiff made a formal complaint of abuse and stalking against Allen

11   with UESF, the exclusive representative of teachers employed by Five Keys.  *Id.* at ¶¶ 18, 56.

12   UESF did not respond to the complaint.  *Id.* at ¶ 56.  On or about June 28, 2022, Plaintiff

13   contacted UESF about Five Keys denying her "salary, benefits, and a safe work environment."  *Id.*

14   at ¶ 57.  Matthew Milton, the Santa Rita Jail site union representative for UESF, called Plaintiff

15   and said the issue was "[o]ut of their hands," which was the last time he communicated with

16   Plaintiff.  *Id.* at ¶ 58.  Plaintiff alleges that UESF denied her Catastrophic Leave, Health and

17   Welfare Funds, union representation, a safe work environment, and safety at Plaintiff's home after

18   receiving information that a crime may have occurred.  *Id.* at ¶ 59.

19           Also on June 21, 2022, Plaintiff made a formal complaint of abuse and stalking against

20   Allen with ACSO, which confirmed knowledge and receipt of the Superior Court's temporary

21   restraining order against Allen.  *Id.* at ¶ 52.  However, from June 21, 2022 to August 9, 2022,

22   Allen violated the restraining order in Plaintiff's workplace at Santa Rita Jail.  *Id.* at ¶ 53.  On

23   October 10, 2022, Plaintiff heard Allen at her front door.  *Id.* at ¶ 68.  The incident was reported to

24   ACSO on October 17, 2022.  *Id.* at ¶ 71.  On October 21, 2022, Plaintiff mailed the County of

25   Alameda a completed government claim form "along with evidence from Deputy Allen."  *Id.* at ¶

26   73.  At some point, ACSO met with Plaintiff, during which they asked Plaintiff "irrelevant

27   questions about Plaintiff's prior behavior" and "attempted to coerce Plaintiff into making a

28   statement about a piece of evidence that Plaintiff brought to the meeting."  *Id.* at ¶¶ 76-77.  On

United States District Court
Northern District of California

November 3, 2022, ACSO informed Plaintiff that they had not interviewed Allen regarding Plaintiff's complaint. *Id.* at ¶ 74. Plaintiff ultimately received ACSO's investigation disposition letter on August 2, 2023 informing Plaintiff that her allegations against Allen were not sustained. *Id.* at ¶¶ 87-88.

On November 4, 2022, Plaintiff reported ACSO to the State of California for "policy violations." *Id.* at ¶ 79. On November 14, 2022, Plaintiff applied to the State of California Victim's Compensation Board for moving expenses "out of terror of living at the home where Deputy Allen had trespassed" and included evidence from Allen in her application. *Id.* at ¶ 81. The Victim's Compensation Board ultimately denied her application because the only report they received from ACSO was an unrelated report written three years prior by Allen. *Id.* at ¶¶ 84-86.

In July or August 2022, Plaintiff was diagnosed with "psychological injury from cumulative trauma." *Id.* at ¶ 60. She has been prescribed medication for chronic violent nightmares and ongoing panic attacks. *Id.* ¶¶ 64, 72. Plaintiff has been on leave without pay from Five Keys since July 1, 2022. *Id.* at ¶ 61.

Plaintiff alleges that all Defendants "did not provide policy, procedure, or law about being an alleged victim of a crime." *Id.* at ¶ 67.

**B. Procedural History**

Plaintiff filed her complaint on August 14, 2023. [Docket No. 1.] She amended the complaint on October 23, 2023. [Docket No. 13 (FAC).] The Five Keys Defendants filed an answer on January 8, 2024. [Docket No. 47.] The remaining eleven Defendants now move to dismiss all claims against them pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1) and 12(b)(6).

The FAC contains seven claims for relief: 1) violation of Plaintiff's First Amendment right to free speech; 2) violation of Plaintiff's Fourth Amendment right to protection from unreasonable search and seizure; 3) violation of Plaintiff's Fourteenth Amendment right to equal protection under the law; 4) a Title VII hostile work environment claim; 5) a Title IX hostile environment claim; 6) trespass to chattel; and 7) invasion of privacy by intrusion upon seclusion. Plaintiff brings the first three claims under 42 U.S.C. § 1983.

4

1    Plaintiff requests compensatory and punitive damages as well as injunctive relief.

2    **II.    LEGAL STANDARDS FOR PLAINTIFF'S CLAIMS**

3        The court sets forth the elements for each of Plaintiff's claims before addressing the

4    arguments raised in each motion to dismiss.

5        **A.  Section 1983**

6        Plaintiff brings the first three claims under 42 U.S.C. § 1983.  Section 1983 "provides a

7    cause of action for the 'deprivation of any rights, privileges, or immunities secured by the

8    Constitution and laws' of the United States."  *Wilder v. Va. Hosp. Ass'n,* 496 U.S. 498, 508 (1990)

9    (quoting 42 U.S.C. § 1983).  Section 1983 "is not itself a source of substantive rights, but merely

10   provides a method for vindicating federal rights elsewhere conferred."  *Nunn v. LeBlanc*, No. C

11   14-0905 PJH, 2014 WL 1089551, at *3 (N.D. Cal. Mar. 17, 2014) (citing *Graham v. Connor*, 490

12   U.S. 386, 393–94 (1989)).  To state a claim under section 1983, a plaintiff must allege two

13   essential elements: (1) that a right secured by the Constitution or laws of the United States was

14   violated, and (2) that the alleged violation was committed by a person acting under the color of

15   state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cty*., 811 F.2d 1243, 1245

16   (9th Cir. 1987).  Plaintiff makes section 1983 claims based on three different constitutional rights:

17   the First Amendment, the Fourth Amendment, and the Fourteenth Amendment.

18       To allege that her First Amendment rights were violated, Plaintiff must show: "(1) that the

19   plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions

20   caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from

21   continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially

22   motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'"  *Knapps*

23   *v. City of Oakland,* 647 F. Supp. 2d 1129, 1160–61 (N.D. Cal. 2009) (citing *Mendocino*

24   *Environmental Center v. Mendocino County,* 192 F.3d 1283, 1300–01 (9th Cir.1999)).

25       To assert that her Fourth Amendment rights were violated, Plaintiff must show that her

26   "persons, houses, papers, [or] effects" were subject to an "unreasonable search[] and seizure[]."

27   *Patel v. City of Los Angeles*, 738 F.3d 1058, 1061 (9th Cir. 2013) (quoting U.S. Const. amend.

28   IV).  "A search occurs for Fourth Amendment purposes when the government physically intrudes

United States District Court
Northern District of California

5

upon one of these enumerated areas, or invades a protected privacy interest, for the purpose of obtaining information." *Id.* (citing *United States v. Jones*, 565 U.S. 400, 406 n.3 (2012); *Katz v. United States,* 389 U.S. 347, 360–61 (1967)).  Where the search did not involve a physical intrusion, the plaintiff must show that an "objectively reasonable" expectation of privacy was violated.  *See Price v. Turner*, 260 F.3d 1144, 1148 (9th Cir. 2001).  A seizure is a "meaningful interference with an individual's possessory interests in [their] property."  *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (quoting *Soldal* v. *Cook County*, 506 U.S. 56, 61 (1992)).

To assert that her rights were violated under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff must show "that a class that is similarly situated has been treated disparately." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1063–64 (9th Cir. 2014) (quoting *Christian Gospel Church, Inc. v. City and Cnty. of San Francisco*, 896 F.2d 1221, 1225 (9th Cir.1990)).  Plaintiff must show that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles,* 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

In any section 1983 claim, the plaintiff must show that the defendant acted "under color of state law." *See McDade v. West*, 223 F.3d 1135, 1139-40 (9th Cir. 2000).  This requires that the defendant "exercised power possessed by virtue of state law and made possible only because the defendant is clothed with the authority of state law." *Id.*

### B.  Title VII

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e *et seq.*  Plaintiff alleges Title VII discrimination under a hostile work environment theory.

Title VII prohibits "discriminatory intimidation, ridicule, and insult" which is "so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) (internal citation omitted).  To establish a hostile work environment claim under Title VII, the plaintiff must show: "(1) the defendants subjected [plaintiff] to verbal or physical conduct based on

United States District Court
Northern District of California

6

1   [plaintiff's protected category]; (2) the conduct was unwelcome; and (3) the conduct was

2   sufficiently severe or pervasive to alter the conditions of her employment and create an abusive

3   working environment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008).  In

4   evaluating a hostile work environment claim, courts consider "all the circumstances, including the

5   frequency of the allegedly discriminatory conduct, its severity, and whether it unreasonably

6   interferes with an employee's work performance." *Id.*

7          **C.  Title IX**

8          Title IX of the 1972 Education Amendments prohibits discrimination on the basis of sex

9   "under any education program or activity receiving Federal financial assistance."  20 U.S.C. §

10  1681.  A plaintiff can pursue a private right of action "against recipients of federal education

11  funding for alleged Title IX violations." *Karasek v. Regents of Univ. of California*, 956 F.3d

12  1093, 1104 (9th Cir. 2020).  The funding recipient does not have to be a traditional educational

13  institution. *See Jeldness v. Pearce*, 30 F.3d 1220, 1225-26 (9th Cir. 1994) (applying Title IX to

14  prison educational programs).  However, Title IX only applies if the discrimination occurred in the

15  context of the funding recipient's education program, and the plaintiff may only recover damages

16  if the "official policy" of the recipient discriminates on the basis of sex. *See Karasek*, 956 F.3d at

17  1104 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).  "In sexual

18  harassment cases, it is the deliberate failure to curtail known harassment, rather than the

19  harassment itself, that constitutes the intentional Title IX violation." *Mansourian v. Regents of*

20  *Univ. of California*, 602 F.3d 957, 967 (9th Cir. 2010).

21         If the Title IX claim for damages arises from harassment on the basis of sex, the plaintiff

22  must show: (1) the defendant "exercise[d] substantial control over both the harasser and the

23  context in which the known harassment occur[red]"; (2) the plaintiff must have suffered

24  harassment "that is so severe, pervasive, and objectively offensive that it can be said to deprive the

25  [plaintiff] of access to the educational opportunities or benefits provided by the [defendant]"; (3)

26  an official with "authority to address the alleged discrimination and to institute corrective

27  measures on the [defendant's] behalf" must have had "actual knowledge" of the harassment; (4)

28  the defendant must have acted with "deliberate indifference" to the harassment, such that the

United States District Court
Northern District of California

1  defendant's "response to the harassment or lack thereof [was] clearly unreasonable in light of the

2  known circumstances"; and (5) the defendant's deliberate indifference must have "subject[ed the

3  plaintiff] to harassment."  *See Karasek*, 956 F.3d at 1105 (citing *Davis v. Monroe Cty. Bd. of*

4  *Educ.*, 526 U.S. 629, 640 (1999); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 739 (9th

5  Cir. 2000)).

6          **D.   State Tort Claims**

7          Taylor brings two claims under state tort law: trespass to chattel and invasion of privacy by

8  intrusion upon seclusion.

9          Under California law, trespass to chattel "lies where an intentional interference with the

10  possession of personal property has proximately caused injury." *Thrifty–Tel, Inc. v. Bezenek*, 46

11  Cal. App. 4th 1559, 1566 (1996).  To establish intentional interference, the plaintiff must show

12  that either (a) the defendant "dispossesse[d]" the plaintiff of the personal property; (b) the personal

13  property "is impaired as to its condition, quality, or value"; (c) the plaintiff "is deprived of the use

14  of the [personal property] for a substantial time"; or (d) "bodily harm is caused to the [plaintiff], or

15  harm is caused to some person or thing in which the [plaintiff] has a legally protected interest."

16  Restatement Second of Torts § 218.

17          Intrusion upon seclusion under California law has two elements: "(1) intrusion into a

18  private place, conversation or matter, (2) in a manner highly offensive to a reasonable person."

19  *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).  To establish an intrusion, the

20  plaintiff "must show the defendant penetrated some zone of physical or sensory privacy

21  surrounding, or obtained unwanted access to data about, the plaintiff." *Id*. at 232.  The plaintiff

22  must have had an "objectively reasonable expectation of seclusion or solitude in the place,

23  conversation or data source." *Id*.  Determination of whether an intrusion was offensive involves

24  analysis of all the relevant circumstances, including "the degree of intrusion, the context, conduct

25  and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the

26  setting into which he intrudes, and the expectations of those whose privacy is invaded." *Miller v.*

27  *Nat'l Broad. Co*., 187 Cal. App. 3d 1463, 1483-84 (1986).

28

United States District Court
Northern District of California

### III.   LEGAL STANDARDS GOVERNING MOTIONS TO DISMISS

Pleadings by a self-represented litigant must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.  The Ninth Circuit has held that "where the petitioner is pro se," courts have an obligation, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  "This rule relieves pro se litigants from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013).  "This duty applies equally to pro se motions." *United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020).  However, "a liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled." *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1).  After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).  However, leave to amend may be denied where the complaint "could not be saved by any amendment," i.e., "where the amendment would be futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

### A.  FRCP 8(a)

Rule 8(a) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he short and plain statement must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quotation omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### B.   FRCP 12(b)(1)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to the court's subject matter jurisdiction.  A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted).  When reviewing a 12(b)(1) motion, the court sculpts its approach according to whether the motion is "facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A factual challenge asserts that subject-matter jurisdiction does not exist, independent of what is stated in the complaint. *White*, 227 F.3d at 1242.  In contrast with a facial challenge, a factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *Id*. (citation omitted).  Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

### C.   FRCP 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

## IV.    SUPERIOR COURT

Plaintiff brings her third, fourth, and fifth claims against Defendant Superior Court (section 1983 claim for violation of the Fourteenth Amendment, Title VII, and Title IX).  The Superior Court moves pursuant to Rule 12(b)(1) to dismiss Plaintiff's claims for lack of subject matter jurisdiction.  [Docket No. 18 ("Superior Court Mot.").]  The Superior Court raises two arguments: that state superior courts are immune from suit under the Eleventh Amendment, and that federal courts are barred from reviewing previous state court decisions under the *Rooker-Feldman* doctrine.  The Superior Court also moves to dismiss for failure to state a claim under Rule 12(b)(6).

### A.  Eleventh Amendment

Under the Eleventh Amendment, Plaintiff cannot sue the Superior Court under section 1983.

"[T]he Court long ago held that the Eleventh Amendment bars a citizen from bringing suit against the citizen's own State in federal court." *Welch v. Tex. Dep't of Highways and Pub. Transp.,* 483 U.S. 468, 472, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) (citing *Hans v. Louisiana,* 134 U.S. 1, 10, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).  The exception is when Congress has "unequivocally expressed its intent to abrogate the immunity ... pursuant to a valid exercise of [its] power." *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (internal quotations omitted).  Based on this exception to Eleventh Amendment immunity, a plaintiff may bring Section 1983 claims against cities and counties.  *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987).  But a plaintiff cannot bring section 1983 claims against the state or an "arm of the state."  *Munoz v. Superior Ct. of Los Angeles Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024).  The Superior Court of California Contra Costa County is an "arm" of the State of California, so it is immune from section 1983 claims.  *See id*.  This immunity also extends to section 1983 suits against state judges.  *Id*.  Therefore, Plaintiff's section 1983

United States District Court
Northern District of California

claim against the Superior Court is dismissed with prejudice.

However, a state waives its Eleventh Amendment immunity with respect to Title VII and Title IX upon receipt of federal funds.  *See, e.g., Carmen v. San Francisco Unified Sch. Dist.*, 982 F. Supp. 1396, 1405 (N.D. Cal. 1997), aff'd, 237 F.3d 1026 (9th Cir. 2001); *Steshenko v. Gayrard*, 70 F. Supp. 3d 979, 990 (N.D. Cal. 2014).  Plaintiff asserts in her opposition that the Superior Court receives federal funds, which would abrogate Eleventh Amendment immunity with respect to Title VII and Title IX.

The Superior Court argues under Rule 12(b)(6) that Plaintiff has failed to state claims under Title VII or Title IX.  Plaintiff concedes in her opposition that the Superior Court is not her employer.  [Docket No. 54 (Sup. Ct. Opp'n) 4.]  Therefore, her Title VII claim is dismissed with prejudice.  Plaintiff argues that the Superior Court is a recipient of federal funding and operates educational programs under Title IX.  However, Plaintiff is not able to allege that she suffered discrimination in an education program being operated by the Superior Court.  *See Karasek*, 956 F.3d at 1104.  Title IX only prohibits sex discrimination in the context of the educational programs or activities operated by the defendant.  *See* 20 U.S.C. § 1681(a).  Title IX prohibits sex discrimination "under" an education program or activity.  20 U.S.C. § 1681(a).  The plain meaning of this statute is that the discrimination has to be in the context of the education program operated by the defendant.  *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645 (1999) (defining "under" as "subject to the authority, direction, or supervision of").  Plaintiff cannot allege that she experienced sex discrimination under an education program operated by the Superior Court.  Therefore, Plaintiff's Title IX claim is also dismissed with prejudice.

### B.  *Rooker-Feldman* Doctrine

In addition, all three of Plaintiff's claims against the Superior Court are barred by the *Rooker-Feldman* doctrine.

"The *Rooker-Feldman* doctrine is a well-established jurisdictional rule prohibiting federal courts from exercising appellate review over final state court judgments."  *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858-9 (9th Cir. 2008).  The "doctrine forbids a losing party in state

court from filing suit in federal district court complaining of an injury caused by a state court judgment, and seeking federal court review and rejection of that judgment." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). "The purpose of the doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence being called upon to review the state court decision.'" *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (quoting *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983)). The doctrine applies to both final judgments and "interlocutory state court decisions." *Doe & Assocs.*, 252 F.3d at 1030.

To determine whether the doctrine applies, "a district court first must determine whether the action contains a forbidden de facto appeal of a state court decision." *Bell*, 709 F.3d at 897 (citing *Noel v. Hall,* 341 F.3d 1148, 1158 (9th Cir. 2003)). "A de facto appeal exists when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision.' In contrast, if 'a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.'" *Id*. (quoting *Noel*, 341 F.3d at 1164).

If a plaintiff seeks to bring a forbidden de facto appeal, the plaintiff "may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought." *Id*. (quoting *Noel*, 341 F.3d at 1158). The Ninth Circuit has clarified that the "inextricably intertwined" language "is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the *Rooker-Feldman* analysis. Should the action not contain a forbidden de facto appeal, the *Rooker-Feldman* inquiry ends." *Id*. (emphasis in original) (internal citation omitted).

Plaintiff's claims against the Superior Court rest on her contention that Judge Craddick "used her opinion instead of evidence" when deciding on Plaintiff's permanent restraining order. FAC ¶ 42. Plaintiff argues that her claims are not a de facto appeal because she is not asking the court to review the Superior Court's decision, but only to review Plaintiff's exhibits and the exhibits attached to the Alameda Defendants' Request for Judicial Notice. Sup. Ct. Opp'n 2;

[Docket No. 42 ("Alameda RJN")].[4]

Plaintiff's sole challenge is that in the order denying Plaintiff's request for a permanent restraining order, Judge Craddick stated: "You felt things were happening which I don't think were intended by Ms. Allen." *Id.* at ¶ 42.[5]  Plaintiff essentially attacks Judge Craddick's reasoning. This is precisely the type of act protected by *Rooker-Feldman*.  *See Noel*, 341 F.3d at 1163.  The appropriate remedy when a judge allegedly uses flawed reasoning in a decision is to appeal the decision.  Plaintiff does not bring any complaints against the Superior Court which are not "inextricably intertwined" with Judge Craddick's decision.  Further supporting this conclusion is Plaintiff's request for injunctive relief; Plaintiff requests that the Superior Court reverse its prior decision and grant Plaintiff's permanent restraining order against Allen.  In short, this is a prohibited de facto appeal.

In her opposition, Plaintiff points to the "policy" described in Judge Craddick's temporary restraining order which prohibits the recipient of the order from owning or possessing guns, other firearms, or ammunition.  Sup. Ct. Opp'n 5.  However, this "policy" is merely a statement of law ordered by Judge Craddick.  It is not separate from the judge's exercise of her decision-making power.  Plaintiff's claims arise solely from Judge Craddick's reasoning supporting her decision not to issue the permanent restraining order.

In sum, Plaintiff's claims against the Superior Court are dismissed with prejudice.

## V.    UESF DEFENDANTS

Plaintiff brings her third, fourth, and fifth claims against the UESF Defendants (UESF and Matthew Milton).  These are the same claims she asserted against the Superior Court.  As previously explained, Plaintiff alleges that she attempted to make a formal complaint of abuse and stalking against Allen with UESF, but UESF did not respond.  FAC ¶ 56.  Plaintiff later contacted

---

[4] For reasons discussed below, the court denies judicial notice of the Alameda RJN.

[5] Plaintiff's makes two allegations against the Superior Court: that it "prohibit[ed] Plaintiff to peacefully assemble at work and her private residence after receiving evidence that a suspected crime had occurred," *id.* at ¶ 43, and that it "did not provide policy, procedure, or law about being an alleged victim of a crime." *Id.* at ¶ 67.  These allegations are conclusory and confusing.  At the March 28, 2024 hearing, Plaintiff confirmed that the sole factual basis for her claims against the Superior Court is Judge Craddick's decision on Plaintiff's permanent restraining order.

United States District Court
Northern District of California

1  UESF about Five Keys denying her "salary, benefits, and a safe work environment," but Milton

2  (on behalf of UESF) responded that the issue was "[o]ut of their hands." *Id.* at ¶¶ 57-58.  Plaintiff

3  alleges that UESF denied her Catastrophic Leave, Health and Welfare Funds, union

4  representation, a safe work environment, and safety at Plaintiff's home after receiving information

5  that a crime may have occurred. *Id.* at ¶ 59.

6       The UESF Defendants move to dismiss all three claims pursuant to Rule 12(b)(6).  [Docket

7  No. 20 ("UESF Mot.").]

8       **A.  Section 1983**

9       Plaintiff's third claim is for deprivation of her Fourteenth Amendment rights under 42

10  U.S.C. § 1983.  In any section 1983 claim, the plaintiff must show that the defendant acted "under

11  color of state law."  *See McDade v. West*, 223 F.3d 1135, 1139-40 (9th Cir. 2000).  "Generally,

12  private individuals and entities cannot be held liable under section 1983, because this section

13  'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'"  *I.H.*

14  *by & through Hunter v. Oakland Sch. for the Arts*, No. 16-CV-05500-SI, 2017 WL 565069, at *3

15  (N.D. Cal. Feb. 13, 2017) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)

16  (internal quotation marks and citation omitted)).  Action taken by private individuals and entities

17  are only under color of state law if the action meets one of four tests: "(1) the public function test;

18  (2) the joint action test; (3) the state compulsion test; [or] (4) the governmental nexus test."

19  *Johnson v. Knowles*, 113 F.3d 1114, 1118 (9th Cir. 1997).

20       Plaintiff's section 1983 claim against the UESF Defendants does not meet any of the state

21  actor tests.  The union does not serve a "public function" traditionally performed by the state.  *See*

22  *id.*  The claim also does not meet the joint action test.  The joint action test requires "an agreement

23  or meeting of the minds" between the defendant and a state actor.  *See Franklin v. Fox,* 312 F.3d

24  423, 441 (9th Cir. 2002).  Plaintiff does not plead an agreement between the UESF Defendants

25  and the state.  Plaintiff alleges that the UESF Defendants denied her benefits and failed to properly

26  respond to her complaints against Allen.  She does not allege that the UESF Defendants acted

27  jointly with the state, nor does she raise any facts indicating a conspiracy between the UESF

28  Defendants and the state.  *See Johnson,* 113 F.3d at 1119.  As to the state compulsion test, Plaintiff

United States District Court
Northern District of California

does not allege that the state coerced or encouraged the UESF Defendants to deny her benefits. *See id.* at 1119-20.  Lastly, the claim does not meet the governmental nexus test.  This test requires a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 1120.

In her opposition, Plaintiff states that the UESF Defendants and state actors "acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom." [Docket No. 59 ("UESF Opp'n") 10.]  This is conclusory.  Plaintiff's opposition also contends that Milton had "a conversation" with Melanie Fukuhara, a principal at Five Keys, on the same day that Milton called Plaintiff.  UESF Opp'n 11.  Plaintiff does not allege that Melanie Fukuhara or Five Keys are state actors.  Even if she did, the mere fact of a "conversation" does not create a "nexus" or evidence of a conspiracy. *See Franklin*, 312 F.3d at 441 (finding that defendant's conversations with the police did not demonstrate that defendant had conspired with the police).  "To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights." *Id.* at 445.  Plaintiff has alleged no facts that would allow the court to draw a reasonable inference that Five Keys and UESF shared a common goal of violating Plaintiff's constitutional rights.

The UESF Defendants were private actors, not state actors, when they allegedly denied Plaintiff's union benefits and did not properly respond to her complaints. *See Franklin*, 312 F.3d at 446.  Therefore, Plaintiff cannot state a viable section 1983 claim against them.  Plaintiff's section 1983 claims against the UESF Defendants are dismissed with prejudice. *See Thinket Ink Info. Res., Inc.*, 368 F.3d at 1061 (denying leave to amend "where the amendment would be futile").

### B.  Title VII and Title IX claims

Title VII and Title IX claims cannot be brought against individuals. *Lum v. Kauai Cnty. Council*, 358 F. App'x 860, 862 (9th Cir. 2009) ("there is no individual liability under Title VII"); *Doe By & Through Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1563 (N.D. Cal. 1993) ("Title IX makes institutions, not individuals, liable").  Plaintiff's Title VII and Title IX claims against Milton are therefore dismissed with prejudice.

16

United States District Court
Northern District of California

At the March 28, 2024 hearing Plaintiff conceded that her complaint was unrelated to any educational programs or activities operated by UESF.  As discussed above, Title IX only applies if sex discrimination occurred under the funding recipient's education program.  *See Karasek*, 956 F.3d at 1104.  Therefore, Plaintiff's Title IX claim against UESF is dismissed with prejudice.

With respect to the Title VII claim, Plaintiff conceded at the hearing that UESF was not her employer.  However, Title VII applies to unions as well as employers.  42 U.S.C. §§ 2000e–2(c), 2000e–3(a).  "[§ 2000e–2(c)] forbids discrimination by any labor organization, and [§ 2000e–3(a)] forbids retaliation against a person who has asserted rights under Title VII or supported another person's assertion of rights."  *Green v. Am. Fed'n of Tchrs./Illinois Fed'n of Tchrs. Loc. 604*, 740 F.3d 1104, 1105 (7th Cir. 2014).  A union may be liable under Title VII if a union member can show that the member "was singled out and treated less favorably than others similarly situated on account of race or any other criterion impermissible under the statute."  *Beck v. United Food & Com. Workers Union, Loc. 99*, 506 F.3d 874, 884 fn. 4 (9th Cir. 2007) (quoting *Gay v. Waiters' & Dairy Lunchmen's Union*, 694 F.2d 531, 537 (9th Cir.1982)).  The plaintiff does not have to show that the union breached its duty of fair representation or that the collective bargaining agreement was violated in order to make a Title VII claim.  *See Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 863 (9th Cir. 2016).

Taylor did not plead facts to support that UESF treated her less favorably than others similarly situated because of her race or gender.  She also did not plead facts to support that the union retaliated against her because she was asserting her Title VII rights.  At the March 28, 2024 hearing, Plaintiff alleged that UESF denied her benefits because UESF had a preference for San Francisco Unified School District employees as opposed to Five Keys employees, and because UESF improperly applied its non-fraternization policy to Plaintiff's complaint.  Neither of these allegations implicate Title VII, because they do not suggest that UESF's conduct was motivated by Plaintiff's race or gender.  Plaintiff's Title VII claim against UESF is dismissed with prejudice.[6]

---

[6] The UESF Defendants also argue that Plaintiff's complaint is under the exclusive jurisdiction of the California Public Employment Relations Board (PERB) to the extent that Plaintiff is alleging

1    In sum, Plaintiff's claims against Milton and UESF are dismissed with prejudice.

2    ## VI.   SAN FRANCISCO DEFENDANTS

3    Plaintiff brings her first, third, fourth, fifth, and seventh claims against the San Francisco

4    Defendants (CCSF and SFSD).  These claims are for violation of the First Amendment and the

5    Fourteenth Amendment (both brought under section 1983), Title VII, Title IX, and invasion of

6    privacy.  In her opposition, Plaintiff dropped her invasion of privacy claim against the San

7    Francisco Defendants.[7]  [Docket No. 70 ("SF Opp'n") 13.]

8    The San Francisco Defendants move to dismiss all claims against them for improper

9    joinder under Rule 21 and for failure to state a claim under Rule 12(b)(6).  At the March 28, 2024

10   hearing, CCSF argued that the court may consider facts outside of Plaintiff's complaint in order to

11   determine if joinder of the San Francisco Defendants is proper.  However, CCSF did not brief the

12   court on the propriety of considering outside facts in its motion to dismiss [Docket No. 24 ("SF

13   Mot.")] or in its request for judicial notice [Docket No. 28 ("SF RJN")].  Under Ninth Circuit law

14   a defendant may present facts beyond the plaintiff's complaint showing misjoinder, but only in the

15   specific circumstance of an alleged "fraudulent joinder" where the plaintiff joined the defendant to

16   defeat complete diversity and the defendant is seeking removal to federal court.  *See McCabe v.*

17   *Gen. Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987).  That is not the case here.  Therefore, the

18   court will not consider facts beyond Plaintiff's complaint and judicially noticeable facts when

19

20   _____

21   unfair labor practices.  UESF Mot. 8.  PERB does have exclusive jurisdiction over unfair practice
     charges brought under the Education Employment Relations Act (EERA).  Cal. Gov. Code §
     3541.5.  PERB also has exclusive jurisdiction over common law and state law claims which have

22   "potential overlap" with the unfair practice charges.  *El Rancho Unified Sch. Dist. v. Nat'l Educ.*
     *Assn.*, 33 Cal. 3d 946, 959 (1983) (citing *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council*

23   *of Carpenters*, 436 U.S. 180, 200 (1978)).  However, this exclusive jurisdiction does not extend to
     federal civil rights claims.  *See De Malherbe v. Int'l Union of Elevator Constructors*, 438 F. Supp.

24   1121, 1131 (N.D. Cal. 1977) (finding that the court had jurisdiction over federal civil rights
     claims, concurrent with NLRB's jurisdiction over overlapping unfair labor practice charges under

25   the NLRA); *El Rancho Unified Sch. Dist.*, 33 Cal. 3d at 953 ("the principles defining the
     preemptive reach of the NLRA are generally applicable in determining the scope of PERB's

26   preemptive jurisdiction under EERA").  Plaintiff only brought federal civil rights claims against
     the UESF Defendants.  This court has jurisdiction over her claims.

27   [7] Plaintiff conceded that her invasion of privacy claim should be dismissed against the San
     Francisco Defendants because she did not file a government claim against them in accordance

28   with California's Government Claims Act, Cal. Gov't Code §§ 905 et seq.

United States District Court
Northern District of California

evaluating the sufficiency of the complaint under both Rule 21 and Rule 12(b)(6).

### A. SFSD

The San Francisco Defendants argue that SFSD is not a separate legal entity from CCSF and should be dismissed as a defendant because Plaintiff has effectively named CCSF as a defendant twice. SF Mot. 11. A governmental entity that lacks separate legal status from its home municipality is "incapable of suing or being sued in its own name." *Melendres v. Arpaio*, 784 F.3d 1254, 1260 (9th Cir. 2015). In such situations, the court may substitute the municipality as a party in lieu of the governmental entity. *See id.*

To sue SFSD, Plaintiff must provide evidence that CCSF intended to create the Sheriff's Department as a separate legal entity, such as evidence that SFSD has an operating budget as an independent entity. *See Hervey v. Estes*, 65 F.3d 784, 792 (9th Cir. 1995), *as amended on denial of reh'g* (Dec. 5, 1995). Plaintiff does not allege facts to support that SFSD was created as a separate legal entity subject to suit. Ordinarily, the court would substitute CCSF as the proper party. *See id.* Because CCSF is already a named defendant and the same claims are alleged against it as against SFSD, the court simply dismisses SFSD as a party.

### B. CCSF

#### 1. Misjoinder

Rule 20 of the Federal Rules of Civil Procedure, in relevant part, permits a plaintiff to join multiple defendants into one action if "(A) any right to relief is asserted against them . . . arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). When determining whether defendants are properly joined, the court should "liberally construe [the requirements] in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive determination of the action." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 342 (D.D.C. 2011) (citation & quotation marks omitted); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); *Diabolic Video Prods., Inc. v. Does 1-2099*, No. 10-CV-5865-PSG, at *3. If defendants do not satisfy the test for permissive joinder, the court may sever the misjoined parties, "so long as no substantial right will

19

1  be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)

2  (citation omitted); *see* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an

3  action.  On motion or on its own, the court may at any time, on just terms, add or drop a party").

4        Plaintiff's claims against CCSF arise from her allegation that CCSF is "the local

5  governmental unit for which [Five Keys] worked at all times relevant hereto."  FAC ¶ 20.

6  Plaintiff does not plead any challenged actions taken independently by CCSF.  Instead, at the

7  March 28, 2024 hearing, she asserted that CCSF operates Five Keys and is therefore responsible

8  for Five Keys' acts against her.  Plaintiff represented that she has documentary evidence showing

9  that SFSD was her employer during the events in her complaint.  Therefore, Plaintiff's claims

10  against CCSF can only go forward if Plaintiff can plead facts that support a reasonable inference

11  that CCSF violated her rights as her employer, or if she can otherwise plead that CCSF is legally

12  liable for the actions of Five Keys.

13        The FAC does not allege sufficient facts under either theory.  The court liberally construes

14  the pleadings to allege that Five Keys is (or was) also called "San Francisco Sheriff's Department

15  Five Keys Charter School."  FAC ¶ 8.  This allegation supports the possibility of a connection

16  between SFSD and Five Keys.  However, it does not support the inference that SFSD controlled

17  Five Keys during the relevant time period, rather than at some earlier time.  In her opposition,

18  Plaintiff alleges that the Five Keys Board of Directors includes CCSF employees and affiliates,

19  including "Sheriff Paul Miyomoto in his official capacity."  SF Opp'n 7-8.  Even if Plaintiff were

20  to amend her complaint to add allegations that San Francisco employees sit on the board of Five

21  Keys, this would not be sufficient to support the inference that CCSF controls the actions of Five

22  Keys.

23        At the March 28, 2024 hearing, Plaintiff stated that she could amend the complaint to

24  include other facts and evidence showing that CCSF was her employer during the relevant time

25  period.  Plaintiff's claims against CCSF are dismissed, but Plaintiff is granted leave to amend her

26  complaint with facts showing that CCSF was her employer.[8]

27  

28  [8] CCSF requests judicial notice of Five Keys' charitable organization registration, the contract
between Five Keys and the County of Alameda (and its amendments), and the absence of

*United States District Court*
*Northern District of California*

### 2.   Section 1983

Even if Plaintiff is able to plausibly allege that CCSF was her employer during the relevant time period, Plaintiff must also plead sufficient facts to state a claim against CCSF.  The FAC fails to state a section 1983 claim.

Plaintiff's section 1983 claims for violations of the First and Fourteenth Amendments do not meet the requirements for municipal liability, also known as "*Monell*" liability.  A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 692 (1978)).  However, the municipality may be held liable "only for '[its] *own* illegal acts.'"  *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  It cannot be held vicariously liable for its employees' actions.  *Id.* (citations omitted).  To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury."  *Id.* (quoting *Monell*, 436 U.S. at 691).  "The 'official policy' requirement 'was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality,' and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  *Pembaur*, 475 U.S. at 479-80 (emphasis in original).  Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 61 (citations omitted).  Such policy or practice must be a "moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).

In the Ninth Circuit, a municipality may be liable under section 1983 under three possible theories.  *Rodriguez v. Cnty. Of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018).  The first is where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury."  *Id.* (quoting *Monell*, 436 U.S. at 694).  Second, "a local government can fail to train employees in a manner

---

government claims filed by Plaintiff against CCSF.  Because these documents do not shed light on the question of whether CCSF employed Plaintiff during the relevant time period, the court denies the SF RJN as moot.

that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Finally, a municipality may be liable under section 1983 if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802-03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted)).

Here, Plaintiff has not stated a *Monell* claim against CCSF. The FAC does not contain any allegation that Plaintiff was harmed by the execution of a CCSF policy or custom. This is not like the facts in *Monell*, where the plaintiffs alleged that the Department of Social Services and of the Board of Education of the city of New York had an official policy which forced pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons, and the plaintiffs were harmed by that unlawful forced leave. *Monell*, 436 U.S. at 661. The complaint also does not contain any allegation that CCSF failed to train its employees in a manner that amounts to "deliberate indifference" to Plaintiff's constitutional rights. *See Rodriguez*, 891 F.3d at 802-03 (finding that a "failure to investigate and discipline employees in the face of widespread constitutional violations" could show deliberate indifference). Nor does the complaint allege that a CCSF official with final policy-making authority harmed Plaintiff or ratified a subordinate's harm of Plaintiff. *See Gillette v. Delmore*, 979 F.2d 1342, 1347-50 (9th Cir. 1992) (finding no municipal liability for the allegedly unconstitutional discipline of a fire fighter, where the chief of the fire department did not create the city's policy on disciplining fire fighters, and where the city manager did not make a deliberate choice to endorse the chief's decision to discipline the fire fighter).

At the hearing, the court asked Plaintiff to identify any additional facts she could allege to support *Monell* liability against CCSF. She could not. Therefore, Plaintiff's section 1983 claims against CCSF are dismissed with prejudice.

### 3.  Title VII

Plaintiff's Title VII claim fails because she has not alleged that CCSF was her employer, as discussed above.  Even if CCSF were her employer during the relevant time period, Plaintiff has not sufficiently pleaded facts to support a Title VII claim based on a hostile work environment.

To establish a hostile work environment claim under Title VII, the plaintiff must show: "(1) the defendants subjected [plaintiff] to verbal or physical conduct based on [plaintiff's protected category]; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Surrell*, 518 F.3d at 1108.  Additionally, if a non-employee is the harasser, the plaintiff must show that the employer "either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct." *Folkerson v. Circus Circus Enterprises, Inc.,* 107 F.3d 754, 756 (9th Cir. 1997).  Plaintiff has not alleged that Allen is a CCSF employee.  Plaintiff has also not alleged any specific facts to show that CCSF ratified or acquiesced in Allen's harassment.

Plaintiff's Title VII claim against CCSF is dismissed with leave to amend to show that CCSF was her employer during the relevant time, and to add specific facts supporting her allegation of hostile work environment against CCSF.

### 4.  Title IX

As discussed above, a plaintiff can only bring a Title IX claim against a federal funding recipient if the discrimination occurred within the context of the funding recipient's education programs or activities.  *See* 20 U.S.C. § 1681.  Like Plaintiff's Title VII claim, Plaintiff's Title IX claim against CCSF fails because Plaintiff has not pleaded sufficient facts to support that CCSF was her employer at Five Keys.

Similar to her Title VII claim, Plaintiff has failed to show that CCSF was deliberately indifferent to known harassment.  *See Mansourian*, 602 F.3d at 967.  Plaintiff alleges no facts supporting that CCSF had "substantial control" over Allen or the Five Keys workplace; that a CCSF official with authority to institute corrective measures had "actual knowledge" of the

1    harassment; or that CCSF's response to the harassment was "clearly unreasonable," subjecting

2    Plaintiff to further harassment.  *See Karasek*, 956 F.3d at 1105.  Plaintiff's Title IX claim against

3    CCSF is dismissed with leave to amend.

4         In summary, Plaintiff's claims against SFSD are dismissed with prejudice.  Plaintiff's

5    section 1983 claim against CCSF is dismissed with prejudice.  Plaintiff's Title VII and Title IX

6    claims against CCSF are dismissed with leave to amend the complaint by making non-conclusory

7    allegations to support that CCSF was her employer, to establish the elements of a hostile work

8    environment, and to establish that CCSF ratified or acquiesced in the harassment (for Title VII) or

9    was deliberately indifferent (for Title IX).

10   **VII.   CALIFORNIA**

11        Plaintiff brings her third, fourth, and fifth claims against California.  Plaintiff clarified at

12   the March 28, 2024 hearing that her claims against California are based on how the California

13   Department of General Services handled her complaint against Allen and County of Alameda, and

14   how the Victim's Compensation Board handled her application for moving expenses.  California

15   moves to dismiss based on Eleventh Amendment immunity and Rule 12(b)(6).  [Docket Nos. 50

16   ("Cal. Mot.") and 70 ("Cal. Reply").]

17        **A.  Eleventh Amendment**

18        As discussed above with respect to Defendant Superior Court, a plaintiff cannot bring

19   section 1983 claims against the state.  *Munoz v. Superior Ct. of Los Angeles Cnty.*, 91 F.4th 977,

20   980 (9th Cir. 2024).  Taylor's section 1983 claim against California is dismissed with prejudice.

21   However, a state waives its Eleventh Amendment immunity with respect to Title VII and Title IX

22   upon receipt of federal funds.  *See Carmen*, 982 F. Supp. at 1405.

23        **B.  Failure to State a Claim**

24        Plaintiff's Title VII claim against California is dismissed with prejudice because Plaintiff

25   cannot assert that California is her employer.

26        Plaintiff's Title IX claim against California is dismissed with prejudice because her

27   allegations are unrelated to any education programs or activities operated by California.  As

28   discussed above, a defendant can only be held liable under Title IX for discrimination that occurs

United States District Court
Northern District of California

in the context of the defendant's education programs or activities.

For these reasons, Plaintiff's claims against California are dismissed with prejudice.

## VIII.   ALAMEDA DEFENDANTS

Plaintiff pleads all seven claims against the Alameda Defendants (County of Alameda, ACSO, and Allen).  As previously explained, Plaintiff alleges that Allen "engaged in an unreasonable search, unreasonable seizure, and a continuing seizure of the Plaintiff and her property at the Plaintiff's residence" on December 5, 2021.  FAC ¶ 29.  Plaintiff alleges that she made a formal complaint of abuse and stalking against Allen with ACSO on June 21, 2022 and notified ACSO of the temporary restraining order against Allen, but ACSO allowed Allen to violate the restraining order.  *Id.* at ¶ 53.  On October 10, 2022, Plaintiff heard Allen at her front door.  *Id.* at ¶ 68.  The incident was reported to ACSO on October 17, 2022.  *Id.* at ¶ 71.  ACSO later met with Plaintiff, during which they asked Plaintiff "irrelevant questions about Plaintiff's prior behavior" and "attempted to coerce Plaintiff into making a statement about a piece of evidence that Plaintiff brought to the meeting."  *Id.* at ¶¶ 76-77.  On November 3, 2022, ACSO informed Plaintiff that they had not interviewed Allen regarding Plaintiff's complaint.  *Id.* at ¶ 74.  Plaintiff ultimately received ACSO's investigation disposition letter on August 2, 2023 informing Plaintiff that her allegations against Allen were not sustained.  *Id.* at ¶¶ 87-88.

The Alameda Defendants move to dismiss all claims against them under Rule 12(b)(6).  [Docket No. 41 ("Alameda Mot.").]  For the same reasons discussed above regarding SFSD and its relationship to CCSF, ACSO is dismissed as a party pursuant to Rule 21 because the complaint already asserts claims against County of Alameda.[9]

### A.  Section 1983 Claims Against Allen

Defendant Allen argues that she is not liable under section 1983 because she was not acting under color of state law with respect to her actions challenged by Plaintiff in this lawsuit.

"[A] state employee who is on duty, or otherwise exercises his official responsibilities in

---

[9] The Alameda Defendants request judicial notice of the transcript of the August 9, 2022 Superior Court hearing on Plaintiff's petition for a permanent restraining order against Allen.  Alameda RJN.  The court takes judicial notice of the fact that the hearing occurred, but not the disputed facts contained in the transcript.  *See Khoja*, 899 F.3d at 999.

an off-duty encounter, typically acts under color of state law." *Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015) (citing West, 487 U.S. at 49–50, 108 S.Ct. 2250; McDade, 223 F.3d at 1139–41). "That is true even if the employee's offensive actions were illegal or unauthorized." *Naffe*, 789 F.3d at 1037. "A state employee who is off duty nevertheless acts under color of state law when (1) the employee purports to or pretends to act under color of law, (2) his pretense of acting in the performance of his duties had the purpose and effect of influencing the behavior of others, and (3) the harm inflicted on plaintiff related in some meaningful way either to the officer's governmental status or to the performance of his duties.  On the other hand, a government employee does not act under color of state law when he pursues private goals via private actions." *Id.* (cleaned up, citations omitted).

Allen asserts that Plaintiff's section 1983 claims against her arise solely from her "domestic disputes" with Plaintiff.  Alameda Mot. 6-7.  Plaintiff's allegations are sparse and do not elaborate on the nature of her relationship with Allen or provide any context for the claims she asserts against Allen.  The FAC does not contain enough facts about Allen's challenged conduct to survive a motion to dismiss.  However, the court cannot rule out the possibility that Plaintiff could make allegations to support that Allen (a deputy sheriff) was a state actor with respect to Plaintiff's section 1983 claims against Allen, as opposed to a private citizen.  Plaintiff is granted leave to amend her complaint.

In addition, Plaintiff's section 1983 claims against Allen fail because she has not alleged facts showing that Allen violated her constitutional rights.  To allege that her First Amendment rights were violated, Plaintiff must show: "(1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Knapps,* 647 F. Supp. 2d at 1160–61.  To assert that her Fourth Amendment rights were violated, Plaintiff must show that her "persons, houses, papers, [or] effects" were subject to an "unreasonable search[] and seizure[]." *Patel*, 738 F.3d at 1061. To assert that her rights were violated under the Equal Protection Clause of the Fourteenth

26

Amendment, Plaintiff must show that Allen "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *See Lee,* 250 F.3d at 686.  The FAC makes only conclusory allegations that Plaintiff's rights were violated, and it does not allege any facts to support the elements of each claim described above.

Plaintiff's claims under section 1983 (claims one, two, and three) against Allen are dismissed.  Plaintiff may amend her complaint to allege specific facts about what Allen did to violate her constitutional rights and how Allen was acting under color of law.

### B.  Section 1983 claim against County of Alameda

As previously discussed, to establish *Monell* liability, a plaintiff "must prove that 'action pursuant to official municipal policy' caused their injury." *Connick,* 563 U.S. at 60.  Here, Plaintiff has not stated a *Monell* claim against the County of Alameda, as the complaint does not contain any facts supporting Plaintiff's allegation that her constitutional rights were injured by an official municipal policy.  This claim is dismissed with leave to amend.

### C.  Title VII and Title IX claims against Allen

Plaintiff's Title VII and Title IX claims against Allen are dismissed with prejudice because such claims cannot be brought against individuals.  *See Lum v. Kauai Cnty. Council*, 358 F. App'x 860, 862 (9th Cir. 2009); *Doe By & Through Doe v. Petaluma City Sch. Dist*., 830 F. Supp. 1560, 1563 (N.D. Cal. 1993).

### D.  Title VII claim against County of Alameda

#### 1.  Common-law agency test

Defendant County of Alameda argues that Plaintiff's Title VII claim should be dismissed because County of Alameda was not Plaintiff's employer.  Plaintiff's complaint states that Plaintiff was a Five Keys employee, and that Five Keys signed a contract with County of Alameda to provide educational services in Alameda County jails.  In her opposition, Plaintiff argues that Alameda County was her employer because it controlled "the means and manner of Plaintiff's work performance." [Docket No. 55 (Alameda Opp'n) 8.]  Plaintiff alleges that County of Alameda provided her with her original hiring document, that it controlled her security clearance at her workplace in Santa Rita Jail, and that it was responsible for assigning Allen (a County of

1  Alameda employee) to supervise her classroom.  *Id.*

2       Under Title VII, an employee may have two or more "joint employers" who are equally

3  liable for discrimination.  *U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d

4  631, 637 (9th Cir. 2019).  The Ninth Circuit applies the common-law agency test to determine

5  whether a party is a joint employer.  *Id.* at 639.  "Under the common-law test, 'the principal

6  guidepost' is the element of control—that is, 'the extent of control that one may exercise over the

7  details of the work of the other.'"  *Id.* at 638 (quoting *Clackamas Gastroenterology Associates,*

8  *P.C. v. Wells*, 538 U.S. 440, 447 (2003).  The Ninth Circuit provided a non-exhaustive list of

9  factors to determine the extent of control:

10         the skill required; the source of the instrumentalities and tools; the
       location of the work; the duration of the relationship between the
11         parties; whether the hiring party has the right to assign additional
       projects to the hired party; the extent of the hired party's discretion
12         over when and how long to work; the method of payment; the hired
       party's role in hiring and paying assistants; whether the work is part
13         of the regular business of the hiring party; whether the hiring party is
       in business; the provision of employee benefits; and the tax treatment
14         of the hired party.

15  *Id.* (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992)).

16       The fact that Plaintiff worked in an Alameda County jail because Five Keys had a contract

17  with County of Alameda is not enough by itself to support an inference that County of Alameda

18  and Five Keys were her joint employers.  The FAC does not currently state a claim against County

19  of Alameda on a joint employer theory. Plaintiff is granted leave to amend the complaint to

20  include factual allegations supporting a reasonable inference that County of Alameda is her joint

21  employer.

22           **2.**    **Exhaustion of Administrative Remedies**

23       Defendant also argues that Plaintiff's Title VII claim should be dismissed because Plaintiff

24  did not plead exhaustion of administrative remedies.  *See Surrell v. California Water Serv. Co.*,

25  518 F.3d 1097, 1103 (9th Cir. 2008) (stating that Title VII requires the plaintiff to exhaust

26  administrative remedies before seeking a private action for damages).  Plaintiff did not plead

27  exhaustion in the complaint, but in her opposition, she states that she received her right-to-sue

28  letter from the Equal Employment Opportunity Commission with regards to her complaints

United States District Court
Northern District of California

against County of Alameda.  Alameda Opp'n 9.  Plaintiff is granted leave to amend the complaint to plead exhaustion of administrative remedies.

### 3.  Failure to State a Claim

County of Alameda argues that Plaintiff's Title VII claim should be dismissed for failure to allege a prima facie case of discrimination.  As discussed above, Plaintiff has failed to establish the elements of a hostile work environment claim.  Plaintiff's belief, asserted in her opposition brief, that "if a male engaged in the same type of misconduct as Defendant Allen, [Plaintiff's] complaint would have been handled correctly," is conclusory and speculative.  Alameda Opp'n 9.  Factual allegations in a complaint must be more than speculative.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff's Title VII claim against County of Alameda is dismissed.  Plaintiff is granted leave to amend her complaint with specific facts and evidence showing that County of Alameda was her joint employer and that County of Alameda discriminated against her based on a hostile work environment theory.

### E.  Title IX claim against County of Alameda

Like her Title VII claim, Plaintiff's Title IX claim fails because she makes only conclusory allegations of harassment on the basis of sex.  In addition, she has not clearly alleged facts sufficient to support a reasonable inference that the County of Alameda exercised "substantial control" over both the harasser and the context in which the harassment occurred; that the County of Alameda acted with "deliberate indifference" to the harassment, such that the defendant's "response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances"; or that such deliberate indifference subjected her to further harassment.  *See Karasek*, 956 F.3d at 1105.

Plaintiff's Title IX claim against County of Alameda is dismissed.  Plaintiff is granted leave to amend her complaint with specific facts and evidence showing that she was harassed on the basis of sex and that County of Alameda is liable under a deliberate indifference theory.

### F.  State law claims against Allen

Allen moves to dismiss Plaintiff's trespass to chattel claim because Plaintiff failed to plead

1   actual harm.  Allen moves to dismiss Plaintiff's invasion of privacy claim because Plaintiff failed

2   to plead an offensive intrusion in a private place.

3              **1.     Trespass**

4       Plaintiff's trespass claim appears to be based on Allen's "unauthorized physical contact

5   with Plaintiff's Wi-Fi network, front door, and cellphone at Plaintiff's residence."  FAC ¶ 107.

6   "[T]respass to a chattel may be committed by intentionally (a) dispossessing another of the chattel,

7   or (b) using or intermeddling with a chattel in the possession of another."  *Alfaro*, 645 F. Supp. 3d

8   at 958.  In order to make out a claim for trespass to chattel, "the defendant's interference must . . .

9   have caused some injury to the chattel or to the plaintiff's rights in it."  *Intel Corp. v. Hamidi*, 30

10  Cal. 4th 1342, 1350 (2003).  Where there is a trespass to personal property, the owner "may

11  recover only the actual damages suffered by reason of the impairment of the property or the loss of

12  its use."  *Zaslow v. Kroenert,* 29 Cal. 2d 541, 551 (1946).  Plaintiff makes only conclusory

13  allegations that Allen had "unauthorized physical contact" with her personal property.  Plaintiff

14  does not plead that this "contact" damaged her property or interfered with its use.

15      In her opposition, Plaintiff alleges that Allen committed trespass to land by forcing her

16  way into Plaintiff's home.  Alameda Opp'n 11.  But Plaintiff's claim is for trespass to chattel

17  (personal property), not land (real property).  Even if Plaintiff did claim a trespass to land, her

18  allegations are still deficient.  In order to plead trespass to land, the plaintiff must show that: "(1)

19  the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or

20  negligent entry on the property; (3) lack of permission to enter the property, or acts in excess of

21  the permission; (4) actual harm; and (5) the defendant's conduct as a substantial factor in causing

22  the harm."  *Williams v. Santander Bank,* No. CV1504188SJORAOX, 2015 WL 4484202, at *3

23  (C.D. Cal. July 22, 2015) (quoting *Ralphs Grocery Co. v. United Food & Commercial Workers

24  Union Local 8*, 186 Cal.App. 4th 1078, 1085 (2010)).  Plaintiff has not pleaded specific facts to

25  show that Allen intentionally, recklessly, or negligently entered her property; that Allen lacked

26  permission to enter her property; and that Allen's conduct was a substantial factor in Plaintiff's

27  harm.

28      Plaintiff's trespass claim against Allen is dismissed with leave to amend.

United States District Court
Northern District of California

### 2.      Intrusion upon Seclusion

An action for intrusion upon seclusion has two elements: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." *Shulman*, 18 Cal. 4th at 231.  The plaintiff must have had an "objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." *Id*. at 232.  Liberally construing the pleadings, Plaintiff has alleged that Allen obtained unwanted access to data about Plaintiff's personal schedule.  FAC ¶ 111.  Plaintiff has not explained why she would have an "objectively reasonable expectation" that she could keep this schedule private, and why Allen's access to the schedule would be "highly offensive to a reasonable person." *See Shulman,* 18 Cal. 4th at 231.  Plaintiff must allege enough non-conclusory facts for the court to evaluate the nature of Allen's alleged intrusions and whether they were objectively offensive.  Plaintiff's intrusion upon seclusion claim is dismissed with leave to amend.

### G.  State law claims against County of Alameda

Defendant County of Alameda moves to dismiss Plaintiff's two state law claims against it because Allen's alleged conduct did not occur in the scope of her employment.

"The doctrine of respondeat superior applies to public and private employers alike." *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 209 (1991).  "[R]espondeat superior liability attaches if the activities 'that cause[d] the employee to become an instrumentality of danger to others' were undertaken with the employer's permission and were of some benefit to the employer or, in the absence of proof of benefit, the activities constituted a customary incident of employment." *Purton v. Marriott Int'l, Inc*., 218 Cal. App. 4th 499, 509, 159 Cal. Rptr. 3d 912, 919 (2013) (quoting *Childers v. Shasta Livestock Auction Yard, Inc*., 190 Cal. App. 3d 792, 804 (Ct. App. 1987)).  Liability does not attach "where the misconduct does not arise from the conduct of the employer's enterprise but instead arises out of a personal dispute . . . or is the result of a personal compulsion." *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 11 Cal. 4th 992, 1006 (1995).  "In such cases, the risks [of harm] are engendered by events unrelated to the employment, so the mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of his or her duties does not render the employer vicariously liable." *Id*.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiff has alleged that Allen was employed by the Alameda County Sheriff's Office.

2    FAC ¶ 10.  However, Plaintiff's trespass claim against County of Alameda appears to be based

3    entirely on Allen's conduct as a private individual.  Plaintiff does not allege that Allen trespassed

4    in the course of providing some benefit to County of Alameda, or that the trespass was within the

5    scope of Allen's employment.  Plaintiff's opposition alleges that Allen harassed Plaintiff while on

6    duty, but harassment is not an element of trespass.  Alameda Opp'n 10.

7    Plaintiff's intrusion upon seclusion claim appears to be based on Allen acquiring Plaintiff's

8    personal schedule from other Five Keys employees.  Plaintiff does not allege that the acquisition

9    of her personal schedule was for the benefit of County of Alameda or otherwise within the scope

10   of Allen's employment with County of Alameda.

11   Plaintiff's state law claims against County of Alameda are dismissed with leave to amend.

12   **IX.    AHERN AND BRODIE**

13   Defendant Gregory Ahern was sheriff and coroner of ACSO.  Defendant Daniel Brodie

14   was the captain of ACSO's Internal Affairs when Plaintiff made her formal complaint against

15   Allen to ACSO.  Plaintiff brings her third, fourth, and fifth claims against Defendants Ahern and

16   Brodie.  Ahern and Brodie move to dismiss.  [Docket No. 64 ("Ahern Mot.").]

17   Plaintiff's Title VII and Title IX claims against Ahern and Brodie are dismissed without

18   leave to amend because such claims cannot be brought against individuals.  *See Lum*, 358 F.

19   App'x at 862; *Doe By & Through Doe*, 830 F. Supp. At 1563.  The only remaining claim against

20   Ahern and Brodie is under section 1983 for violation of the Fourteenth Amendment.

21   It is not clear from the pleadings, but Plaintiff seems to be alleging that Ahern and Brodie

22   discriminated against Plaintiff in their capacity as ACSO employees.  She elaborates in her

23   opposition that Ahern and Brodie are liable for Allen's discriminatory harassment because they

24   were Allen's supervisors, were aware of the harassment, and did not take action to stop it.

25   [Docket No. 72 ("Ahern Opp'n") 9.]  "A supervisor is liable under § 1983 for a subordinate's

26   constitutional violations 'if the supervisor participated in or directed the violations, or knew of the

27   violations and failed to act to prevent them.'"  *Maxwell v. Cnty. Of San Diego*, 708 F.3d 1075,

28   1086 (9th Cir. 2013) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989)).

To begin with, Ahern and Brodie could only be liable under a supervisory theory if Allen is liable under section 1983 herself, and Plaintiff has failed to allege sufficient facts supporting this claim, as discussed above.

Plaintiff also did not plead sufficient facts showing that Ahern and Brodie were Allen's supervisors.  Liability does not attach to "administrators [who] had no supervisory authority over the [state actor] who allegedly committed the violations. . . . They cannot be supervisors of persons beyond their control." *Felarca v. Birgeneau*, 891 F.3d 809, 820 (9th Cir. 2018).  Plaintiff states that Ahern is a "sheriff" and Brodie is a "captain," but this does not support an inference that they had supervisory authority over Allen or that Allen was within their chain of command. *See Wright v. Airway Heights Correction Ctr. MSU*, No. 2:20-CV-00436-MKD, 2022 WL 17543678, at *4 (E.D. Wash. Dec. 8, 2022).  Additionally, Plaintiff makes only conclusory allegations that Ahern and Brodie were aware of Allen's discriminatory harassment and failed to act on it.

Plaintiff's section 1983 claims against Ahern and Brodie are dismissed with leave to amend.

## X.   CONCLUSION

The court rules as follows:

- Superior Court's motion to dismiss is granted without leave to amend.

- UESF Defendants' motion to dismiss is granted without leave to amend.

- San Francisco Defendants' motion to dismiss is granted.  Plaintiff may amend only her Title VII and Title IX claims against CCSF.

- California's motion to dismiss is granted without leave to amend.

- Alameda Defendants' motion to dismiss is granted.  Plaintiff may amend all her claims against County of Alameda.  Plaintiff may amend her section 1983 and state law claims against Allen.

- Ahern and Brodie's motion to dismiss is granted.  Plaintiff may amend only her section 1983 claims against Ahern and Brodie.

Accordingly, judgment shall be entered in favor of the Superior Court, UESF, and

California against Plaintiff.  Plaintiff shall file an amended complaint by **June 21, 2024**.  The court refers Plaintiff to the link entitled "Representing Yourself" on the Court's website, located at https://cand.uscourts.gov/pro-se-litigants/, as well as the Court's Legal Help Centers for unrepresented parties. Parties may schedule an appointment by calling 415-782-8982 or emailing FedPro@sfbar.org.

 **IT IS SO ORDERED.**

Dated: May 31, 2024

_____
Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California

34