1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    MECHIEL TAYLOR,                        Case No.  23-cv-04121-DMR

8                    Plaintiff,

9         v.                               **ORDER ON MOTIONS TO DISMISS**
                                           **SECOND AMENDED COMPLAINT**
10   FIVE KEYS SCHOOLS AND
     PROGRAMS, et al.,                     Re: Dkt. Nos. 104, 105, 107
11
                    Defendants.
12

13          Plaintiff Mechiel Taylor, representing herself, brings this second amended complaint

14   against seven defendants alleging civil rights and state tort claims relating to incidents that

15   happened during Plaintiff's employment with Five Keys Schools and Programs ("Five Keys").

16   [Docket No. 103 (Second Amended Complaint, "SAC").][1]  Defendants now move to dismiss in

17   three different motions:

18          -    City and County of San Francisco ("CCSF") [Docket No. 104 (CCSF Mot.)];

19          -    Alameda County, Nicole Tremaine Allen, and Gregory Ahern (collectively "Alameda

20               Defendants") [Docket No. 105 (Alameda Mot.)];[2]

21          -    Five Keys, Steve Good, and Melanie Fukuhara (collectively "Five Keys Defendants")

22               [Docket No. 107 (Five Keys Mot.)].[3]

23

---

[1] In the SAC, Plaintiff makes references to Alameda County Sheriff's Office, San Francisco
Sheriff's Department, and Matthew Milton as defendants.  As these parties have already been
dismissed from this matter with prejudice, [Docket Nos. 99, 100], the court does not consider any
claims made against them.

[2] Plaintiff drops Daniel Brodie as a Defendant.  SAC ¶ 261.

[3] Lisa Haynes and Mary Vigil are listed as Defendants in SAC ¶ 22, but no facts or claims are
alleged against them in the SAC.  The court dismisses Haynes and Vigil as Defendants.

1    Plaintiff opposes all three motions.  [Docket Nos. 108, 110, 112.]  The court finds the matter

2    suitable for resolution without oral argument.  L. R. 7-1(b).  For the following reasons, the

3    motions are granted in part and denied in part.

4    **I.      BACKGROUND**

5        **A.      Statement of Facts**

6          Plaintiff makes the following allegations in the SAC, which the court takes as true for

7    purposes of this motion.[4]  In 2009, Plaintiff began working as a full-time baking teacher at Santa

8    Rita Jail (SRJ) in Alameda County.  SAC ¶ 9.  Plaintiff's duties included teaching and certifying

9    students as Food Safety Managers and Handlers, as well as maintaining the safety and security of

10   her designated classroom and kitchen in SRJ's housing unit 25.  *Id.* at ¶ 14.  Plaintiff's original

11   employer was the Alameda County Sheriff's Office (ACSO), and ACSO issued Plaintiff's security

12   badge and jail keys which she used from 2009 to 2022.  *Id.* at ¶¶ 9, 12-13.  In 2016, Plaintiff's

13   employer changed.  *Id.* at ¶ 27.  Plaintiff appears to allege that Five Keys and CCSF both became

14   her employers starting in 2016.  *Id.* at ¶¶ 27, 160, 202.  As an employee of Five Keys/CCSF,

15   Plaintiff continued to work as a teacher at SRJ under a contract for educational services between

16   Alameda County and Five Keys/CCSF.  *Id.* at ¶ 27-29.

17         In 2018, Nicole Tremaine Allen began working at SRJ as a deputy sheriff.  *Id.* at ¶¶ 23, 30.

18   In April 2019, Allen began to supervise Plaintiff's class; until that point, Plaintiff's classroom and

19   kitchen in housing unit 25 was "the only teacher-assigned classroom that did not have security

20   cameras or dedicated deputy supervision."  *Id.* at ¶¶ 15, 32.  In May 2019, Allen and Plaintiff

21   exchanged phone numbers.  *Id.* at ¶ 33.  In July 2019, Allen and another coworker used a work

22   computer in SRJ to "perform their own investigation into Plaintiff's private life."  *Id.* at ¶ 38.

23   Although not explicitly stated in the SAC, the allegations support a reasonable inference that

24   Plaintiff and Allen began a personal relationship at some point.[5]

25   _____

26   [4] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
     of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
27   (per curiam) (citation omitted).

28   [5] The Alameda Defendants and Five Keys Defendants request judicial notice of the transcript of an
     August 9, 2022 Superior Court hearing regarding Plaintiff's petition for a domestic violence

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff alleges that Allen's supervision in her classroom in housing unit 25 created a hostile work environment for Plaintiff.  *Id.* at ¶ 48.  This is because Allen "invaded Plaintiff's personal space . . . by sitting within inches of her once the students arrived," and then whenever Plaintiff said or did something Allen "did not like," Allen would move to the back of the classroom and look down at her personal phone, or would "shoot dirty looks" at Plaintiff.  *Id.* at ¶¶ 43-47.  Plaintiff characterizes this behavior as "punishment," and alleges that Allen's conduct prevented her from freely expressing herself to her students.  *Id.*

In 2020, Plaintiff's work location changed because of COVID protocols.  *Id.* at ¶¶ 49-50.  Throughout 2020 and 2021, Plaintiff was assigned to teach in the Sandy Turner Education Center (STEC) and STEC II (a separate building from STEC).  *Id.* at ¶¶ 52, 56.  Allen's office was in STEC.  *Id.* at ¶ 52.  Although Allen was no longer supervising her classroom, Allen would "frequently" enter Plaintiff's STEC classroom to "deliberately take Plaintiff's attention from teaching her students," and would coerce Plaintiff into watching "inappropriate videos" on Allen's phone.  *Id.* at ¶¶ 54-55.  When Plaintiff taught at STEC II, Allen would also monitor Plaintiff from Allen's office using the security cameras in STEC II.  *Id.* at ¶¶ 60-61.  In May 2021, as Plaintiff was leaving STEC to go home, Allen detained Plaintiff behind a slider door and used the intercom speaker to tell Plaintiff she was upset at her for trying to leave without saying good-bye to Allen.  *Id.* at ¶¶ 62-63.  Plaintiff and Allen were both assigned to work Saturday mornings at SRJ.  *Id.* at ¶¶ 64-65.  In Plaintiff's office space, Allen would "play[] practical jokes on her, excessively monitor her, and force her to engage" with Allen against Plaintiff's will.  *Id.* at ¶ 66.

Plaintiff attempted to distance herself from Allen.  *Id.* at ¶ 51.  Between 2021-2022, Plaintiff began showing up for work later and later because each morning Allen would be in Plaintiff's office space.  *Id.* at ¶ 67.  Plaintiff also changed her shift days and hours in an effort to avoid Allen.  *Id.* at ¶ 68.  In September or October 2021, Plaintiff "ended all communication with Allen" and attempted to avoid her at work.  *Id.* at ¶ 69.  However, Allen "intimidated and

restraining order against Allen.  [Docket Nos. 106, 107-1.]  As held previously, the court takes judicial notice of the fact that the hearing occurred, but not the disputed facts contained in the transcript.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); [Docket No. 99 (First Order on MTD) 25 n.9].

1    humiliated Plaintiff into re-engaging her by showing up daily to Plaintiff's office to speak to

2    everyone in the room but her," and Plaintiff began communicating with her again.  *Id.* at ¶ 73.  On

3    December 4, 2021, a non-workday for both Plaintiff and Allen, Allen called Plaintiff over her

4    personal phone, shouted at her, and asked that Plaintiff call her over the weekend.  *Id.* at ¶¶ 75-77.

5    Plaintiff refused, and Allen got upset and hung up.  *Id.* at ¶¶ 78-79.

6         On December 6, 2021, Plaintiff and Allen both worked at SRJ.  *Id.* at ¶¶ 81-86.

7    Throughout the workday from 8:00 am to 3:00 pm, Allen repeatedly called Plaintiff's personal

8    phone and office phone, facetimed her, texted her, and came to Plaintiff's workspace.  *Id.* at ¶ 87.

9    Plaintiff ignored her.  *Id.* at ¶ 91.  Plaintiff left work one hour early at 3:00 pm and went to her

10   apartment, where she resides with her minor child.  *Id.* at ¶¶ 89-92, 109.  Allen continued calling

11   and texting Plaintiff until around 7:30 pm.  *Id.* at ¶¶ 89-94.  From 7:30 pm to 8:00 pm, Allen

12   remotely accessed Plaintiff's home wi-fi and Nest thermostat and turned the thermostat to 90

13   degrees three separate times, despite Plaintiff's attempts to regain control of the thermostat.  *Id.* at

14   ¶¶ 96-99.  Allen was still working her overtime shift at SRJ at this time.  *Id.* at ¶ 97.  Around 8:00

15   pm, Plaintiff finally texted Allen back, saying: "I told you before not to touch my thermostat, but

16   you continue to violate my boundaries.  The only thing I want from you is money for my pg&e

17   bill."  *Id.* at ¶ 100.  Plaintiff continued to ignore Allen.  *Id.* at ¶ 104.  Allen sent a money wire

18   transfer to Plaintiff at 8:30 pm.  *Id.* at ¶ 101.  However, the frequency of Allen's calls increased.

19   *Id.* at ¶¶ 102-103.

20        At 8:30 pm, in anticipation of Allen arriving at her home, Plaintiff began constructing a

21   "heavy barrier" behind her front door.  *Id.* at ¶ 105.  Around 9:00 pm, Allen arrived and used her

22   body and her work boot to force entry into Plaintiff's home.  *Id.* at ¶ 107.  Allen used such force

23   that both parties sustained minor injuries, Allen injuring her foot and Plaintiff injuring her arm.

24   *Id.* at ¶ 108.  Plaintiff told Allen to leave, but Allen refused.  *Id.* at ¶¶ 110-11.  Plaintiff attempted

25   to leave the apartment, but Allen blocked her exit.  *Id.* at ¶¶ 112-113.  Plaintiff then ran to a

26   bathroom and locked herself inside.  *Id.* at ¶ 114.  Allen followed Plaintiff, shouted profanities,

27   and demanded that Plaintiff come out.  *Id.* at ¶ 115.  She found Plaintiff's personal phone,

28   unlocked it, and read her text messages aloud while shouting through the bathroom door.  *Id.* at ¶¶

United States District Court
Northern District of California

118-119.  Plaintiff remained in the bathroom until Allen finally left.  *Id.* at ¶ 119.

The next day, Plaintiff sought medical attention for anxiety due to Allen's actions and was ultimately diagnosed with generalized anxiety disorder.  *Id.* at ¶¶ 121-126.  From December 7, 2021 to May 1, 2022, Plaintiff avoided Allen "as safely as possible."  *Id.* at ¶ 131.  On May 1, 2022, Allen began texting Plaintiff shortly after Plaintiff arrived for her shift at SRJ.  *Id.* at ¶ 133. Plaintiff became anxious, texted Allen that she was tired of being abused by her, and said, "Enjoy your life."  *Id.* at ¶¶ 134-135.  Plaintiff then ceased all communications with Allen permanently. *Id.* at ¶ 135.  From May 2 to May 8, 2022, Allen repeatedly called and texted Plaintiff's personal phone.  *Id.* at ¶¶ 136-137.  On May 8, 2022, Plaintiff blocked her number on her personal phone. *Id.* at ¶ 138.  From May 8 to June 12, 2022, Allen continued to initiate unwanted contact by calling Plaintiff's work phone, entering Plaintiff's workspace, emailing Plaintiff, mailing a letter to Plaintiff's home address, and having Allen's mother text Plaintiff.  *Id.* at ¶¶ 139-147.  Allen did not stop until Plaintiff reported Allen's behavior to the police on June 12, 2022.  *Id.* at ¶¶ 149-150.

Plaintiff first reported Allen's conduct to Five Keys staff on June 1, 2022.  *Id.* at ¶ 146.  On June 12, 2022, after suffering a debilitating panic attack, Plaintiff made a formal complaint against Allen with Five Keys and requested paid leave to seek mental health treatment and a temporary restraining order.  *Id.* at ¶ 8.  Five Keys/CCSF refused to pay Plaintiff under the Family and Medical Leave Act.  *Id.* at ¶ 170.  They also refused to arrange for a law enforcement patrol of her home, denied her workers' compensation claim, and did not submit the necessary paperwork for her to obtain short term disability benefits.  *Id.* at ¶¶ 173, 179, 183-184, 189-190.  Plaintiff alleges that Five Keys/CCSF and Allen's supervisor Gregory Ahern failed to enforce Plaintiff's restraining order against Allen from June 21, 2022 to August 9, 2022, because Allen was allowed to "enter Plaintiff's workspace to visit with" Melanie Fukuhara, another Five Keys employee.  *Id.* at ¶¶ 22, 177.

In August 2022, Five Keys/CCSF "subjected Plaintiff to a hostile psychological evaluation."  *Id.* at ¶ 185.  In October 2022, they denied Plaintiff "all benefits listed in the employee handbook and union contract."  *Id.* at ¶ 191.  In December 2022, they terminated Plaintiff's medical insurance.  *Id.* at ¶ 193.  In May 2023, Plaintiff emailed her coworkers asking

them to "report their observations" to Five Keys or ACSO, and in response, Five Keys/CCSF deactivated Plaintiff's work email account.  *Id.* at ¶ 197.  In July 2023, Five Keys/CCSF called Plaintiff and told her to resign.  *Id.* at ¶ 198.  In August 2023, they sent Plaintiff a disposition email regarding her complaint against Allen, which stated that they had never investigated the complaint and blamed Plaintiff for the hostile work environment.  *Id.* at ¶ 199.

On June 21, 2022, Plaintiff also filed a formal complaint against Allen with ACSO.  *Id.* at ¶ 210.  On August 30, 2022, ACSO emailed Plaintiff and told her that because Plaintiff's permanent restraining order had been denied in state court, ACSO was "not interested" in responding to her formal complaint.  *Id.* at ¶ 238.  ACSO did not interview Plaintiff about her complaint until November 3, 2022.  *Id.* at ¶ 212.  During the interview, ACSO staff "made fun of" Plaintiff and ended the meeting before she could finish speaking.  *Id.* at ¶¶ 213-214.  They also refused to investigate Allen's computer or the jail's security cameras.  *Id.* at ¶ 237.  In June 2023, Plaintiff received ACSO's disposition letter.  *Id.* at ¶ 215.

### B.    Procedural History

Plaintiff filed a first amended complaint on October 23, 2023.  [Docket No. 13 (FAC).] The Five Keys Defendants filed an answer on January 8, 2024.  [Docket No. 47.]  The remaining Defendants moved to dismiss, and on May 31, 2024, the court granted their motions to dismiss with partial leave to amend.  [Docket No. 99 (May Order).]  Plaintiff then filed the SAC.

Plaintiff brings five federal claims: violations of 42 U.S.C. § 1983 under the First, Fourth, and Fourteenth Amendments, hostile work environment under Title VII, and hostile work environment under Title IX.  Plaintiff also brings two state law claims: trespass to chattel and intrusion upon seclusion.

## II.    LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual

United States District Court
Northern District of California

matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Pleadings by a self-represented litigant must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.  The Ninth Circuit has held that "where the petitioner is pro se," courts have an obligation, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  "This rule relieves pro se litigants from the strict application of procedural rules and demands that courts not hold missing or inaccurate legal terminology or muddled draftsmanship against them." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013).  "This duty applies equally to pro se motions." *United States v. Qazi*, 975 F.3d 989, 993 (9th Cir. 2020).  However, "a liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled." *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1).  After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted).  However, leave to amend may be denied where the complaint "could not be saved by any amendment," i.e., "where the amendment would be futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*, 368 F.3d 1053, 1061 (9th Cir. 2004).

United States District Court
Northern District of California

United States District Court
Northern District of California

### III.   FIVE KEYS DEFENDANTS' MOTION TO DISMISS

Plaintiff brings the following claims against Five Keys: 1) section 1983 violation of the First Amendment, 2) section 1983 violation of the Fourteenth Amendment, 3) Title VII, 4) Title IX, and 5) intrusion upon seclusion.  Plaintiff also asserts the First Amendment and intrusion upon seclusion claims against the individual Five Keys employees Steve Good and Melanie Fukuhara.

The Five Keys Defendants move to dismiss all claims on the basis that Plaintiff did not plead any facts against them in the SAC.  Five Keys Mot. 10-13.[6]  This argument lacks merit with respect to Five Keys.

For starters, on January 8, 2024, Five Keys Defendants filed an answer instead of challenging the FAC.  [Docket No. 47.]  In the SAC, Plaintiff cites many of the same facts against her employer as she did in the FAC, but simply identifies CCSF as her employer instead of Five Keys.  Plaintiff emphasizes in her opposition that she did not intend to change her complaint against Five Keys and merely inadvertently excluded the name Five Keys from parts of the SAC.  [Docket No. 112.]  Five Keys cannot take advantage of technical errors made by a self-represented Plaintiff to essentially renege on the answer it already filed.

Moreover, considering the procedural history of the case and liberally construing pro se Plaintiff's complaint, it is clear that Plaintiff intended to plead facts against Five Keys.  Plaintiff describes numerous facts to support her claims against her employer, which she identifies at various points in the SAC as Five Keys, CCSF, Five Keys/CCSF, or "CCSF Defendants."  Taking Plaintiff's factual allegations as true, the court may reasonably infer that Plaintiff's employer is either Five Keys, CCSF, or both.  The court construes Plaintiff's allegations in the SAC against her employer as supporting her claims against Five Keys.  The Five Keys Defendants fail to address any of those allegations.

Nevertheless, the court dismisses Plaintiff's section 1983 and state law claims against the Five Keys Defendants with prejudice.  Although not raised by the Five Keys Defendants, the court

---

[6] Five Keys Defendants also request judicial notice of the SAC.  [Docket No. 107-1.]  Judicial notice of the SAC is unnecessary and moot.

*sua sponte*[7] finds that California charter schools and their employees sued in their official capacity are entitled to Eleventh Amendment immunity. *See J.C. by & through W.P v. Cambrian Sch. Dist.*, No. 12-CV-03513-WHO, 2014 WL 229892, at *5 (N.D. Cal. Jan. 21, 2014), *aff'd sub nom. J.C. ex rel. W.P. v. Cambrian Sch. Dist.*, 648 F. App'x 652 (9th Cir. 2016) (dismissing state and federal claims against defendant charter school and its officials pursuant to Eleventh Amendment immunity because California charter schools are considered "arms of the state"). Plaintiff concedes in the SAC that Five Keys is a California charter school operating under California law. SAC ¶¶ 155, 157; Exs. A, B.[8] Therefore, Plaintiff's section 1983 and state law claims against Five Keys are dismissed with prejudice.

Steve Good and Melanie Fukuhara also have Eleventh Amendment immunity as employees of Five Keys to the extent they were sued in their official capacity. Plaintiff has not alleged sufficient facts to support a claim against them in their personal capacity. No factual allegations were made against Good other than that he is the president and CEO of Five Keys. SAC ¶ 21. As for Fukuhara, Plaintiff alleges vaguely that she had a "personal relationship" with Allen. SAC ¶ 207. Plaintiff does not explain how Fukuhara violated Plaintiff's rights simply by having a relationship with Allen. Plaintiff's section 1983 and state law claims against Good and Fukuhara are dismissed with prejudice.

Five Keys does not otherwise argue that Plaintiff's Title VII and Title IX claims should be dismissed. Those claims will therefore go forward. *See* First Order on MTD 12 ("a state waives its Eleventh Amendment immunity with respect to Title VII and Title IX").

## IV.    CCSF'S MOTION TO DISMISS

Plaintiff brings Title VII and Title IX hostile work environment claims against CCSF.

In the court's previous order dismissing the FAC, Plaintiff was granted leave to amend her Title VII and Title IX claims against CCSF with "non-conclusory allegations to support that CCSF

---

[7] "[T]he effect of the Eleventh Amendment must be considered *sua sponte* by federal courts." *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc*., 810 F.2d 869, 873 (9th Cir. 1987).

[8] A court may consider documents attached to the complaint when ruling on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

United States District Court
Northern District of California

was her employer."  May Order 24.  Plaintiff admits that Five Keys hired her.  SAC ¶ 152.

However, she points to various pieces of evidence suggesting that CCSF (through the San

Francisco Sheriff's Department, "SFSD")[9] was also her employer.  SAC ¶¶ 151-166, Ex. A-D.

CCSF argues that the allegations in the SAC are insufficient to plead that CCSF was Plaintiff's

employer during the relevant time period.  CCSF Mot. 9-12.

 Plaintiff points to these allegations to support her claims against CCSF:

1. there was a contract in effect from 2014 to 2017 between the San Francisco Sheriff's Department (SFSD), Five Keys, and the United Educators of San Francisco (UESF), SAC ¶¶ 151-153, Ex. A;

2. a 2015 report by the Western Association of Schools and Colleges described Five Keys as "a charter management non-profit corporation that operates three public charter schools within the San Francisco Sheriff's Department", SAC ¶¶ 154-155;

3. Plaintiff's 2016 onboarding documents and emails identified "The San Francisco Sheriff's Department" as her employer, SAC ¶¶ 164-166, Ex. D;

4. the petition to the San Francisco Unified School District to renew the charter for Five Keys for years 2020-2025 stated that "SFSD's [Five Keys] shall be a separate legal entity" from the District, SAC ¶¶ 157-159, Ex. B;

5. in 2023, Five Keys filed a Form 990 with the IRS which identified the organization name as both "San Francisco Sheriff's Department" and "Five Keys Charter School", SAC ¶ 162; and

6. in 2024, SFSD approved the "Uniform Complaint Policy" for Five Keys, SAC ¶ 163.

 CCSF asserts that these allegations do not create a plausible inference that SFSD or CCSF

was her joint employer or otherwise controlled Five Keys.  CCSF Mot. 9.  Citing *Martinez v.*

*Combs*, 49 Cal. 4th 35, 231 P.3d 259 (2010), *as modified* (June 9, 2010), CCSF argues that

---

[9] In the court's previous order, SFSD was dismissed as a Defendant because Plaintiff did not allege that SFSD was a separate legal entity from CCSF.  First Order on MTD 19.  Here, the court construes the SAC as alleging that CCSF and SFSD are the same legal entity.

United States District Court
Northern District of California

Plaintiff has not met any of the three definitions of employment under *Martinez*: "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Id.* at 64. According to CCSF, Plaintiff has at most only shown an arms-length relationship between Five Keys and SFSD.

*Martinez* dealt with the interpretation of wage orders by the Industrial Welfare Commission (IWC). It does not apply here because the case is not governed by IWC wage orders. *See Hill v. Walmart Inc*., 32 F.4th 811, 819 (9th Cir. 2022). Rather, the appropriate test is under the common law, which states: "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id.* at 818 (quoting *S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels*., 48 Cal. 3d 341, 350 (1989)).[10]

Although this is a close question, the court finds that Plaintiff has pleaded sufficient facts to plausibly allege that CCSF was her employer. In particular, Plaintiff has identified an employment document, emails from human resources, and tax forms which at the very least create confusion about the identity of Plaintiff's employer and the relationship between Five Keys and SFSD/CCSF. SAC ¶¶ 162, 164-166. The nature of the relationship between the entities may soon become clear through discovery. However, at the motion to dismiss stage, the court can dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer*, 622 F.3d at 1041. Here, it is reasonable to infer that the reason "San Francisco Sheriff's Department" is part of the legal name for Five Keys and appears repeatedly in Five Keys employment documents, tax documents, and emails is because SFSD is related to Five Keys in a manner that establishes an employment relationship with Plaintiff. The allegations support a plausible inference that SFSD is involved with Five Keys at a level that demonstrates some control over employees. At the pleadings stage, the court cannot dismiss Plaintiff's claims against CCSF on the basis that it was not her employer.

CCSF goes on to argue that Plaintiff's Title VII and Title IX claims should be dismissed

---

[10] The common law employment relationship test is discussed in more depth later in this opinion.

because Plaintiff has only alleged conduct by Five Keys staff, and "CCSF was not involved." CCSF Mot. 12-13.  As Plaintiff plausibly has pleaded that CCSF is her employer, she has alleged conduct that plausibly can be attributed to CCSF, including that CCSF failed to investigate her sexual harassment complaint.  SAC ¶¶ 188-190, 199.  The court rejects CCSF's merits-based argument that it was "not involved."  As CCSF does not make other arguments to support dismissal, the court denies its motion.

## V.      ALAMEDA DEFENDANTS' MOTION TO DISMISS

Plaintiff brings the following claims against Allen: 1) section 1983 violation of the First Amendment, 2) section 1983 violation of the Fourth Amendment, 3) section 1983 violation of the Fourteenth Amendment, 4) trespass to chattel, and 5) intrusion upon seclusion.

With respect to Alameda County, Plaintiff brings the same three section 1983 claims, trespass to chattel, and hostile work environment claims under Title VII and Title IX.

As to Ahern, Plaintiff asserts a section 1983 claim for violation of the Fourteenth Amendment.

The Alameda Defendants move to dismiss all claims against them.

### A.      Section 1983

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights."  *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) (citing *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  *Nunn v. LeBlanc*, No. C 14-0905 PJH, 2014 WL 1089551, at *3 (N.D. Cal. Mar. 17, 2014) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)).  To state a claim under section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

#### 1.      Allen

Allen argues that all section 1983 claims should be dismissed against her because she did

1    not act under color of state law.  Alameda Mot. 6-7.

2          "The traditional definition of acting under color of state law requires that the defendant in a

3    § 1983 action have exercised power possessed by virtue of state law and made possible only

4    because the wrongdoer is clothed with the authority of state law."  *McDade*, 223 F.3d at 1139–40

5    (quoting *Atkins*, 487 U.S. at 48).  "The acts, therefore, must be performed while the officer is

6    acting, purporting, or pretending to act in the performance of his or her official duties.  *Id.* at 1140.

7    Off duty actions by a state employee may be found to be under color of state law where "(1) the

8    employee purports to or pretends to act under color of law, (2) his pretense of acting in the

9    performance of his duties had the purpose and effect of influencing the behavior of others, and (3)

10   the harm inflicted on plaintiff related in some meaningful way either to the officer's governmental

11   status or to the performance of his duties."  *Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015)

12   (cleaned up, internal citations omitted).  For example, in *McDade,* the court found that a state

13   employee who accessed a password-protected state database to locate the plaintiff's address was

14   acting "under the pretense of performing official duties."  *McDade*, 223 F.3d at 1139–40.

15   Although the employee's motivation was to resolve a private domestic dispute, the employee only

16   had database access privileges due to her status as a state employee.  *Id.*  On the other hand, in

17   *Stanewich*, the court found that a sheriff's deputy did not act under color of state law while

18   committing an attempted robbery.  *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 833-34, 838 (9th

19   Cir. 1996).  The deputy was carrying handcuffs and a gun, and a robbery victim recognized him as

20   a deputy.  *Id.*  The court found that the deputy did not act under color of state law because he was

21   not in uniform, did not display a badge to plaintiffs, and denied being a deputy.  *Id.*

22         Allen argues that the SAC does not establish a "nexus" between Plaintiff's personal

23   disputes with Allen and Allen's position as a state employee.  Alameda Mot. 7.  However, Allen

24   fails to address all of Plaintiff's allegations against her.  The court will examine all allegations

25   against Allen to determine if Plaintiff plausibly pleads that Allen was acting under state law and

26   that her acts violated a constitutional right.

27                              **a.      First Amendment**

28   Plaintiff claims that Allen violated her First Amendment right to free speech.  To assert a

13

1   First Amendment violation, Plaintiff must show: "'(1) that the plaintiff 'was engaged in

2   constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer

3   an injury that would chill a person of ordinary firmness from continuing to engage in that

4   activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to

5   the plaintiff's exercise of constitutionally protected conduct.'" *Knapps v. City of Oakland,* 647 F.

6   Supp. 2d 1129, 1160–61 (N.D. Cal. 2009) (citing *Mendocino Environmental Center v. Mendocino*

7   *County,* 192 F.3d 1283, 1300–01 (9th Cir. 1999)).

8           It is not clear what Allen allegedly did to chill Plaintiff's speech.  In the SAC, Plaintiff

9   points to Allen's supervision of her classroom in housing unit 25, which prevented Plaintiff from

10   "freely expressing herself to her students" for fear that Allen would "punish" her.  SAC ¶¶ 42-47.

11   Plaintiff has sufficiently pleaded that Allen was acting under state law because she was

12   supervising Plaintiff's classroom as part of her duties as a deputy sheriff.  However, Allen's

13   alleged conduct consisted only of sitting close to Plaintiff, moving to the back of the classroom

14   and ignoring Plaintiff, or giving Plaintiff "dirty looks."  *Id.*  This is not enough to "chill a person

15   of ordinary firmness" from expressing herself to her students.  Plaintiff also vaguely alleges she

16   had a First Amendment right to file formal complaints against Allen and that Allen escalated her

17   behavior against Plaintiff in retaliation for filing the complaints.  SAC ¶¶ 243-244.  According to

18   the SAC, Plaintiff first notified a Five Keys staff member about Allen's harassment on June 1,

19   2022, and first made a formal complaint against Allen on June 12, 2022.  SAC ¶¶ 8, 146, 149.

20   Plaintiff alleged only one harassing text message after June 1, 2022, and no further incidents of

21   harassment after June 12, 2022.  *Id.* at ¶ 147-148.  The factual allegations do not support

22   Plaintiff's conclusory assertion that Allen escalated her behavior after Plaintiff reported the

23   harassment.

24           Plaintiff also argues more generally that she had a constitutional right to tell Allen to leave

25   her alone, and that Allen violated her rights by refusing to do so.  Plaintiff points to events in

26   September to October 2021: Plaintiff tried to stop talking with Allen, but Allen "intimidated and

27   humiliated Plaintiff into re-engaging" with her.  Allen allegedly did this by speaking to "everyone

28   in the room but" Plaintiff, and by watching Plaintiff from the adjacent room while she ate lunch

United States District Court
Northern District of California

with a coworker.  SAC ¶¶ 73-74.  Plaintiff did not allege that Allen was acting under state law while socializing with coworkers.  Moreover, there is no First Amendment right to make someone leave you alone just because you ask them to.

Plaintiff also cites the December 6, 2021 incident, when Plaintiff said she would not call Allen and Allen responded by harassing Plaintiff throughout the workday and then escalating her behavior after the workday.  This also does not amount to a violation of the First Amendment, nor do the allegations support that Allen acted under color of state law.  There is no indication that the December 6, 2021 incident was related to Allen's status as a deputy sheriff.  Allen used her office phone to make personal calls to Plaintiff, but "[m]erely using the government employer's resources during the course of a private act does not transform private behavior into state action." *Naffe v. Frey*, No. CV 12-8443-GW(MRWX), 2012 WL 12892151, at *6 (C.D. Cal. Dec. 10, 2012).  Plaintiff does allege that some of the harassment occurred during work hours while Allen was on duty.  SAC ¶¶ 83-97.  But an officer who engages in "purely personal pursuits," even when on duty, does not act under color of state law where the conduct is not related to the performance of her official duties.  *Lucas v. Cnty. of Fresno*, No. 118CV01488DADEPG, 2019 WL 7370418, at *5 (E.D. Cal. Dec. 31, 2019); *see also Martinez v. Colon*, 54 F.3d 980, 987 (1st Cir. 1995) (finding that on-duty police officer who accidentally shot fellow officer while harassing him with his service revolver was "bent on a singularly personal frolic: tormenting an acquaintance," and did not act under color of state law).  Plaintiff does not allege that Allen's communications with Plaintiff and manipulation of her thermostat were related in any way to Allen's position as a deputy sheriff.  Likewise, Plaintiff does not allege that Allen's abusive behavior after she went off duty and forced her way into Plaintiff's home was under the pretense of performing her official duties.  The December 6, 2021 incident cannot support a section 1983 claim.

The SAC does not support a claim that Allen violated Plaintiff's First Amendment rights.  As amendment would be futile, this claim is dismissed with prejudice.

### b. Fourth Amendment

Plaintiff alleges that Allen violated her Fourth Amendment right to protection from unreasonable search and seizure.

United States District Court
Northern District of California

1   The Fourth Amendment provides: "The right of the people to be secure in their persons,

2   houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

3   U.S. Const. amend. IV.  "A 'search' occurs when the government intrudes upon an expectation of

4   privacy that society is prepared to consider reasonable. A 'seizure' of property occurs when there

5   is some meaningful interference with an individual's possessory interests in that property."

6   *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).

7   Plaintiff again points to the December 6, 2021 incident. But as explained above, Plaintiff

8   has not alleged that Allen was acting under state law during this incident, so it does not support a

9   section 1983 claim.

10   Plaintiff also argues that Allen performed an unconstitutional search when she investigated

11   Plaintiff's personal life on a government computer.  This allegation is too conclusory for the court

12   to infer that Allen was acting under state law.  As explained above, using state resources such as a

13   computer does not necessarily mean that Allen was clothed with the authority of the state.  *See*

14   *Naffe*, 2012 WL 12892151, at *6.  Plaintiff also does not explain what information Allen found, so

15   Plaintiff has not demonstrated a reasonable expectation of privacy in that information.  *See*

16   *Jacobsen*, 466 U.S. at 113.

17   Plaintiff has not alleged that Allen violated her Fourth Amendment rights.  As Plaintiff

18   already had an opportunity to amend her complaint but was still unable to state a claim, Plaintiff's

19   Fourth Amendment claim is dismissed with prejudice.

20   **c.      Fourteenth Amendment**

21   Plaintiff alleges that Allen violated her rights under the Equal Protection Clause by acting

22   with an intent to discriminate against her.

23   "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

24   'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

25   direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne*

26   *Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "To

27   state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the

28   Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose

16

to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing *Washington v. Davis*, 426 U.S. 229, 239–40 (1976)). "[A]llegations of 'persistent and unwelcome physical and verbal abuse' in the workplace 'state a claim of sexual harassment, which can be impermissible sex discrimination in violation of the Equal Protection Clause.'" *Sampson v. Cnty. of Los Angeles by & through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1022–23 (9th Cir. 2020) (citing *Bator v. Hawaii*, 39 F.3d 1021, 1027, 1028 (9th Cir. 1994)).

Allen argues that Plaintiff failed to demonstrate that Allen's harassment was under color of state law. To determine if harassment is actionable under section 1983, the court must decide if there is a "'nexus between the defendant's misconduct and [her] relationship to the state,' or alternatively, whether the 'acts of co-worker harassment . . . occurred in a state-created workplace but were . . . independent of state roles and functions.'" *Savin v. City & Cnty. of San Francisco*, No. 16-CV-05627-JST, 2017 WL 2686546, at *4 (N.D. Cal. June 22, 2017) (citing *Anthony v. Cnty. of Sacramento, Sheriff's Dep't*, 845 F. Supp. 1396, 1401 (E.D. Cal. 1994)).

In opposition, Plaintiff points out that Allen used her authority as a deputy sheriff when monitoring Plaintiff over the jail security cameras to "check her out," as well as detaining Plaintiff behind a jail door to force Plaintiff to "say good-bye" to Allen before she could go home. SAC ¶¶ 60-63; [Docket No. 110 (Alameda Opp'n) at 4]. In reply, Allen asserts that "locking doors is common in a jail," but otherwise fails address these allegations. [Docket No. 116 (Alameda Reply) at 3.] The court finds that for pleading purposes, the allegations are sufficient to demonstrate a nexus between Allen's harassment and her role as a deputy sheriff. Similar to *McDade,* Allen was acting "under the pretense of performing official duties" when she used her state-granted access to the jail's security systems to block Plaintiff from leaving the jail. *See McDade*, 223 F.3d at 1139–40. Plaintiff has alleged that Allen was acting under color of state law because she used her state-granted authority to surveil and control Plaintiff as part of her campaign of harassment.

Allen makes no other arguments regarding Plaintiff's equal protection claim against her. Therefore, the court denies the motion to dismiss this claim.

### 2.      Alameda County

Alameda County argues that all of Plaintiff's municipal liability claims should be dismissed because Plaintiff did not plead *Monell* liability.  Alameda Mot. 7-9.

A municipality may face section 1983 liability if it "'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692).  A municipality may be held liable "only for '[its] *own* illegal acts.'"  *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  It cannot be held vicariously liable for its employees' actions.  *Id.* (citations omitted).  To establish municipal liability, plaintiffs "must prove that 'action pursuant to official municipal policy' caused their injury."  *Id.* (quoting *Monell*, 436 U.S. at 691).  "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  *Pembaur*, 475 U.S. at 479-80 (emphasis in original).  Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Connick*, 563 U.S. at 61 (citations omitted).  Such policy or practice must be a "moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694).  An official municipal policy may be either formal or informal.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988) (acknowledging that a plaintiff could show that "a municipality's actual policies were different from the ones that had been announced.").

In the Ninth Circuit, a municipality may be liable under section 1983 under three possible theories.  *Rodriguez v. Cnty. Of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018).  The first is where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury."  *Id.* (quoting *Monell*, 436 U.S. at 694).  Second, "a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been

deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)).  Finally, a municipality may be liable under section 1983 if "the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 802-03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013) (internal quotation marks and citation omitted)).

Plaintiff alleges that the County violated her First Amendment rights when she was interviewed regarding her sexual harassment complaint against Allen.  Specifically, Plaintiff alleges that County staff "made fun of the Plaintiff, attempted to coerce the Plaintiff into making a statement about specific evidence, asked irrelevant questions about Plaintiff's sexual history, minimized plaintiff's facts of abuse by comparing her complaint to kids on a school yard," and ended the interview before Plaintiff could finish speaking.  SAC ¶¶ 213-214.  In a similar vein, she alleges that her Fourteenth Amendment rights were violated because her complaint was unfairly managed and not properly investigated.  SAC ¶ 257; Alameda Opp'n 5.  She cites several state and local laws which County of Alameda allegedly failed to comply with in the course of its investigation.  Alameda Opp'n 6.  She asserts that County staff were acting pursuant to a policy, practice, and custom "carried out by every County employee who had the knowledge and capacity to respond." *Id.* at 5.  She also asserts failure to train amounting to deliberate indifference, as well as ratification by Gregory Ahern, the Sheriff of ACSO.  Alameda Opp'n 5-6.

Plaintiff has not pleaded that a County policy, practice or custom inflicted her constitutional injuries.  In her opposition, Plaintiff names several laws and County policies which were allegedly violated by County staff in relation to her harassment complaint.  Alameda Opp'n 5-6.  Under *Monell* liability, the policy itself must cause the harm, not a violation of it. *Rodriguez*, 891 F.3d at 802.  To the extent Plaintiff alleges that County staff acted pursuant to an unwritten policy or custom of mishandling harassment complaints, Plaintiff must first show that the policy was "so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).  For example, a plaintiff can "establish the existence of an

unconstitutional practice or custom" of violating a constitutional right through "evidence of a recurring failure to investigate and discipline officers for" such violations. *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234-35 (9th Cir. 2011).  Plaintiff does not allege that any investigations other than her own were mishandled by Alameda County.  The Ninth Circuit has not "established what number of similar incidents would be sufficient to constitute a custom or policy." *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017).  But the law is clear that "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).  Plaintiff alleges only that her own complaint against Allen was mishandled.  The SAC is devoid of facts to support a reasonable inference that the offending practices are "widespread" or "well settled as to constitute a custom or usage." *See City of St. Louis*, 485 U.S. at 127.

Plaintiff also makes a conclusory allegation that the County failed to train its employees. To evaluate a failure to train claim, the court examines "whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *Canton v. Harris*, 489 U.S. 378, 390 (1989)).  Failure to train cannot be inferred from a single incident of a constitutional violation. *Hyde v. City of Willcox*, 23 F.4th 863, 875 (9th Cir. 2022).  As explained above, Plaintiff has alleged only a single incident—the County's mishandling of her complaint against Allen.  This is insufficient to state a failure to train claim.

Plaintiff asserts in her opposition that Ahern, as Sheriff, had final policymaking authority over ACSO's employment decisions, and that Ahern either personally mishandled or ratified the mishandling of her complaint.  Alameda Opp'n 6.  Plaintiff also argues that Ahern ratified Allen's unconstitutional conduct. *Id.*  Alameda County does not dispute that Ahern had final policymaking authority.  However, Plaintiff has not alleged that Ahern personally mishandled her complaint.  She has not alleged that he was present at her interview or that he was more than tangentially involved in the complaint investigation.  The SAC states that Ahern simply "pass[ed]

20

Plaintiff's complaint onto the next person." SAC ¶ 260. Plaintiff does not explain why assigning another staff member to handle Plaintiff's complaint is a constitutional violation. Plaintiff alleges in a conclusory manner that Ahern violated several laws and policies, such as failing to explain the ACSO's complaint procedure to Plaintiff and failing to conclude the investigation within a 6-month period. *Id.* Plaintiff does not explain why Ahern was required to be personally involved with or responsible for meeting those requirements.

Plaintiff also has not alleged ratification regarding the mishandling of her complaint. "To show ratification, a plaintiff must prove that the 'authorized policymakers approved a subordinate's decision and the basis for it,'" which accordingly requires, "among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (quoting *City of St. Louis*, 485 U.S. at 127). For example, the Ninth Circuit has found that a municipality could be liable for an unconstitutional sexual harassment investigation where the official policymaker "approved both the propriety of the investigation and the report's conclusion." *Fuller v. City of Oakland, Cal*., 47 F.3d 1522, 1536 (9th Cir. 1995), as amended (Apr. 24, 1995). Here, Plaintiff has not alleged that Ahern was aware of the mishandling of her complaint against Allen, much less that he approved it. Plaintiff alleges only that Ahern passed on her complaint to someone else, and that Plaintiff had reached out to him about the status of her complaint before her interview. SAC ¶¶ 212, 260. These allegations do not support a plausible inference that Ahern was aware of the alleged constitutional violations in the handling of Plaintiff's complaint by County staff.

Plaintiff also has not alleged ratification regarding Allen's harassment. The SAC is devoid of facts indicating that Ahern was aware of Allen's harassment before Plaintiff filed a formal complaint, or that the harassment continued after Ahern was notified. Plaintiff alleges in a conclusory manner that Ahern "signed off" on her restraining order against Allen, and that the restraining order was violated between June 21 and August 9, 2022 because Allen was "allowed to enter Plaintiff's workspace to visit with Fukuhara." SAC ¶¶ 175, 177. It is unclear how Allen

1    visiting a coworker while Plaintiff was not present[11] violated Plaintiff's Fourteenth Amendment

2    rights.  Regardless, Plaintiff does not allege any facts to support an inference that Ahern knew

3    about or approved of Allen's activity in this time period.

4         In sum, Plaintiff has not pleaded *Monell* liability for violation of the First or the Fourteenth

5    Amendments.

6         Plaintiff's Fourth Amendment claim against Alameda County is based on Allen's conduct

7    as well as the loss of Plaintiff's SRJ security badge while she was on disability leave.  SAC ¶¶

8    220, 251-253.  As discussed above, because Plaintiff has not alleged that Allen violated her Fourth

9    Amendment rights, Allen's conduct cannot create *Monell* liability for the Fourth Amendment.  In

10   its motion to dismiss, the County argues that Plaintiff has no constitutional right to possess the

11   security badge.  Alameda Mot. 8.  Plaintiff fails to address the security badge issue in her

12   opposition, thereby conceding it.  *See, e.g., Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 fn.

13   4 (9th Cir. 2005) (finding that failure to raise claims in opposition was abandonment of those

14   claims).  Plaintiff has not pleaded *Monell* liability for violation of the Fourth Amendment.

15        Plaintiff has not alleged a section 1983 claim against Alameda County.  As Plaintiff

16   already had an opportunity to amend her complaint but was still unable to state a claim, Plaintiff's

17   section 1983 claims against Alameda County are dismissed with prejudice.

18                    **3.    Ahern**

19        Plaintiff pleads a Fourteenth Amendment violation against Ahern pursuant to section 1983.

20   Plaintiff complains that Ahern failed to enforce the restraining order against Allen, failed to place

21   Allen on administrative leave, and failed to follow state and County procedures regarding

22   Plaintiff's formal complaint against Allen.  SAC ¶¶ 259-260; Alameda Opp'n 6.

23        To the extent Plaintiff is attempting to hold Ahern responsible for his subordinates'

24   constitutional violations, liability exists only "if the supervisor participated in or directed the

25   violations, or knew of the violations and failed to act to prevent them.'"  *Maxwell v. Cnty. Of San*

26

27   _____

     [11] Plaintiff requested paid leave on June 12, 2022, the same day she filed a formal complaint
28   against Allen with Five Keys.  SAC ¶ 8.  It appears from the SAC that Plaintiff stopped going to
     work on June 12, 2022.

United States District Court
Northern District of California

1    *Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th

2    Cir.1989)).  As discussed above, Plaintiff has not alleged that Ahern participated in, directed, or

3    knew about any alleged constitutional violations by Allen or other County staff.

4         To the extent Plaintiff argues Ahern personally violated the constitution, Plaintiff has not

5    pleaded facts supporting that theory.  As discussed above, the allegations indicate that Ahern was

6    no more than tangentially involved in the harassment investigation.  Plaintiff's allegations state

7    that Ahern simply "pass[ed] Plaintiff's complaint onto the next person."  SAC ¶ 260.  Plaintiff

8    does not explain why the Fourteenth Amendment would require Ahern to personally handle her

9    harassment complaint.  Plaintiff also asserts that Ahern had the sole authority to place Allen on

10   administrative leave but failed to do so.  Alameda Opp'n 6.  Plaintiff does not explain why the

11   Fourteenth Amendment would require Ahern to place Allen on administrative leave while the

12   investigation into her complaint was ongoing.

13        As Plaintiff already had an opportunity to amend her complaint but was unable to state a

14   claim against Ahern, this claim is dismissed with prejudice.

15        **B.    Title VII**

16        Plaintiff asserts a Title VII claims against Alameda County.  Alameda County moves to

17   dismiss on the basis that it is not Plaintiff's employer.

18        For the County to be liable, Plaintiff must plead that the County is her "employer" as

19   defined under Title VII.  *U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc*., 915 F.3d

20   631, 637 (9th Cir. 2019) (citing 42 U.S.C. § 2000e-2(a)).  It is "well-settled that an individual can

21   have more than one employer for Title VII purposes."  *Id*.  The Ninth Circuit applies the common-

22   law agency test to determine who is an employer.  *Id*. at 639.  "Under the common-law test, 'the

23   principal guidepost' is the element of control—that is, 'the extent of control that one may exercise

24   over the details of the work of the other.'"  *Id*. at 638 (quoting *Clackamas Gastroenterology*

25   *Associates, P.C. v. Wells*, 538 U.S. 440, 447 (2003).  The Ninth Circuit provided a non-exhaustive

26   list of factors to determine the extent of control:

27            the skill required; the source of the instrumentalities and tools; the
             location of the work; the duration of the relationship between the
28           parties; whether the hiring party has the right to assign additional

United States District Court
Northern District of California

> projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-24 (1992)).

Plaintiff has not sufficiently pleaded that Alameda County is her employer.  Plaintiff pleads that the County originally hired her in 2009 but admits that Five Keys/CCSF became her employer in 2016.  SAC ¶ 27.  During the relevant time period (approximately 2019-2023), Plaintiff alleges only that Alameda County deputies supervised her in the SRJ classrooms and that the County had control over her security badge to access the jail.  She acknowledges that Five Keys/CCSF hired her, paid her, controlled her work assignments and locations, controlled her benefits, and controlled her termination.  SAC ¶¶ 49, 52, 56, 179-198.  The County may have controlled Plaintiff's access to the premises, but Plaintiff does not allege that it had any control over her work as a teacher.  For example, Plaintiff does not allege that the supervising deputies had the authority to change her curriculum or teaching assignments.  In a similar case applying the common-law agency test, the Seventh Circuit found that a public school teacher who was assigned to teach students receiving in-patient treatment at a hospital was not employed by the hospital.  *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 449 (7th Cir. 2023).  Even though the hospital assigned a "representative supervisor" to the teacher, and even though the hospital controlled the teacher's access to the premises and the patients, the court found that the public school still controlled the teaching activities of the plaintiff, and had the ultimate discretion in hiring, firing, and assigning tasks or locations.  *Id.*  The public school was the employer, not the hospital.  *Id.*  Likewise, Five Keys/CCSF controlled Plaintiff's teaching activities, not Alameda County.

Plaintiff cannot assert a Title VII claim against Alameda County because she cannot plausibly allege that it was her employer.  This claim is dismissed without leave to amend.

//

//

//

24

United States District Court
Northern District of California

### C.    Title IX

Plaintiff alleges that Alameda County violated her rights under Title IX.[12]  In its motion to dismiss, the County does not dispute that it is subject to Title IX, nor does it argue that Plaintiff failed to adequately plead the existence of a hostile work environment.  Rather, the County argues it is not liable because Plaintiff has not pleaded facts to support that the County acted with deliberate indifference or that it subjected Plaintiff to further harassment.  Alameda Mot. 13

Title IX of the 1972 Education Amendments prohibits discrimination on the basis of sex "under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681.  In cases that do not involve an official policy of the funding recipient, "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond. . . . [T]he response must amount to deliberate indifference to discrimination."  *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).  Furthermore, the plaintiff must demonstrate that the recipient's "deliberate indifference caused them to be subjected to further discrimination or deprivation."  *Lopez v. Regents of Univ. of California*, 5 F. Supp. 3d 1106, 1125–26 (N.D. Cal. 2013) (citing *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1296 (11th Cir. 2007)).  "In sexual harassment cases, it is the deliberate failure to curtail known harassment, rather than the harassment itself, that constitutes the intentional Title IX violation."  *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 967 (9th Cir. 2010).

The Alameda Defendants argue that an ACSO official did not have actual knowledge of Allen's harassment until June 21, 2022, when Plaintiff first filed a formal complaint with ACSO. Alameda Mot. 13.  They also argue that the County's response was reasonable because Plaintiff's allegations indicate that the County interviewed Plaintiff as part of an investigation into her complaint and later issued a disposition letter, and because Plaintiff did not experience harassment after filing her complaint.  *Id.*  In contrast, Plaintiff alleges that the County was put on actual

---

[12] The SAC only alleges a hostile environment Title IX claim.  The court therefore does not consider arguments regarding a Title IX claim for disparate treatment.

notice of Allen's tendency to create a hostile work environment as early as 2019, when another female teacher filed a sexual harassment complaint with Five Keys/CCSF against Allen. SAC ¶ 205. She alleges that ACSO told her it was not interested in responding to her complaint in an email from August 30, 2022, after the temporary restraining order against Allen had been lifted. *Id.* at ¶ 238. Plaintiff characterizes the County's November 3, 2022 interview as an attempt to humiliate her rather than investigate what actually happened. *Id.* at ¶¶ 213-214. She also alleges that the interview took place more than four months after she filed the complaint, that she received the disposition letter another eight months later, and that the County did not appear to have taken any action in response to her complaint other than interviewing her. *Id.* at ¶¶ 213-215; Alameda Opp'n 8.

Plaintiff's allegations are sufficient to plead deliberate indifference. A Title IX institution is deliberately indifferent if its response to a complaint was "clearly unreasonable in light of the known circumstances," such that it amounted to "an official decision . . . not to remedy the violation." *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006). Plaintiff has alleged facts which, if proven, could indicate that the County's response was clearly unreasonable. According to Plaintiff, the County took no action other than the November 3, 2022 interview in response to her complaint. The November 3, 2022 interview was allegedly hostile and retaliatory, and insufficient by itself to remedy the harassment. Furthermore, "[an institution's] delayed response constitutes deliberate indifference if it prejudices the plaintiff or if the delay was a 'deliberate attempt to sabotage [the p]laintiff's complaint or its orderly resolution.'" *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1106 (9th Cir. 2020) (citing *Oden*, 440 F.3d at 1089). The allegations of unexplained delays in the County's investigation, combined with the August 30, 2022 email and the lack of remedial action, make it facially plausible that the County deliberately attempted to sabotage the orderly resolution of Plaintiff's complaint. Plaintiff has also sufficiently pleaded a causal link between the County's deliberate indifference and her harassment. Plaintiff alleges that another sexual harassment complaint had been filed against Allen by a teacher in 2019. SAC ¶ 205. It is reasonable to infer that the County knew about Allen's tendency to create a hostile work environment since 2019 but failed to take reasonable

1    action in response, exposing Plaintiff to the harassment that she later experienced.

2         Alameda County makes no other arguments against Plaintiff's Title IX claim.  Its motion

3    to dismiss is denied.

4         **D.      Trespass to Chattel**

5         Plaintiff brings a trespass to chattel claim against both Allen and Alameda County,

6    alleging that Allen interfered with her personal property during the December 6, 2021 incident.

7         Under California law, property is either real or personal. *Vieira Enterprises, Inc. v. City of

8    E. Palo Alto*, 208 Cal. App. 4th 584, 596 (2012), as modified on denial of reh'g (Sept. 13, 2012)

9    (citing Civ. Code § 657).  "Real property" is defined as "land and things that are affixed to the

10   land," such as houses and apartments.  *Id.*  Everything else is personal property (also known as

11   chattel).  *Id.*

12        The tort of trespass to chattel "lies where an intentional interference with the possession of

13   personal property has proximately caused injury."  *Thrifty–Tel, Inc. v. Bezenek*, 46 Cal. App. 4th

14   1559, 1566 (1996).  "A trespass to a chattel may be committed by intentionally (a) dispossessing

15   another of the chattel, or (b) using or intermeddling with a chattel in the possession of another."

16   *Jamgotchian v. Slender*, 170 Cal. App. 4th 1384, 1401 (2009) (citing Restatement (Second) of

17   Torts § 217 (1965)).  "[O]ne who intentionally intermeddles with another's chattel is subject to

18   liability only if his intermeddling is harmful to the possessor's materially valuable interest in the

19   physical condition, quality, or value of the chattel, or if the possessor is deprived of the use of the

20   chattel for a substantial time, or some other legally protected interest of the possessor is affected."

21   *Id.* (citing *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1401 (2003)).  The plaintiff must demonstrate

22   "actual damage" to state a claim.  *Hamidi*, 30 Cal. 4th at 1357.

23        Allen argues that Plaintiff has not pleaded trespass to chattel because she has not shown

24   actual damages to her personal property.  Plaintiff alleges that Allen deprived her of the use of her

25   thermostat for approximately 30 minutes, during which time Allen repeatedly seized control of the

26   thermostat without Plaintiff's consent and turned it to 90 degrees.  SAC ¶¶ 97-100.  This is a brief

27   but measurable time during which Plaintiff could not control the temperature of her home,

28   allegedly resulting in higher utility usage.  *See Hamidi*, 30 Cal. 4th at 1357.  Plaintiff also alleges

United States District Court
Northern District of California

27

that her phone was taken and used by Allen without her consent for a substantial amount of time while Plaintiff hid in the bathroom.  SAC ¶¶ 116-120.  This is sufficient to plead a trespass to chattel claim against Allen, albeit a modest one.[13]

Plaintiff has not stated a trespass to chattel claim against Alameda County.  Under California law, the County can only be liable for the torts of its employees if the tort occurred within the scope of employment.  Cal. Gov. Code § 815.2(a).  This means the tort must be "a generally foreseeable consequence of the [employment] activity."  *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 299 (1995) (quoting *Rodgers v. Kemper Constr. Co.*, 50 Cal. App. 3d 608, 618 (Ct. App. 1975)).  As discussed above, Plaintiff has not alleged any facts that connect the December 6, 2021 incident with Allen's position as a deputy sheriff.  It is not a generally foreseeable consequence of Allen's employment that she would remotely manipulate Plaintiff's thermostat using her private wi-fi, force her way into Plaintiff's home, take control of Plaintiff's phone and read Plaintiff's text messages.  As amendment would be futile, Plaintiff's trespass claim against Alameda County is dismissed without leave to amend.

### E.  Intrusion Upon Seclusion

Plaintiff brings an intrusion upon seclusion claim against Allen.

Intrusion upon seclusion under California law has two elements: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person."  *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998).  To establish an intrusion, the plaintiff "must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff."  *Id.* at 232.  The plaintiff must have had an "objectively reasonable expectation of seclusion or solitude in the place, conversation or data source."  *Id.*  Determination of whether an intrusion was offensive involves analysis of all the relevant circumstances, including "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the

---

[13] Plaintiff also alleges that Allen's conduct interfered with her interest in her home and her wi-fi. SAC ¶ 274.  Plaintiff cannot bring a trespass to chattel claim regarding her home, because her home is not personal property.  It is unclear if Plaintiff could allege that her wi-fi is personal property, but regardless, Plaintiff has not alleged any harm to her wi-fi or a deprivation of its use.

1     setting into which he intrudes, and the expectations of those whose privacy is invaded." *Miller v.*

2     *Nat'l Broad. Co*., 187 Cal. App. 3d 1463, 1483-84 (1986).

3          Allen references facts for which the court cannot take judicial notice, including that

4     Plaintiff had given Allen a key to her home because they were in a voluntary romantic

5     relationship.  Alameda Mot. 17-18.  Allen further argues that a romantic relationship "naturally

6     involves relinquishment of a certain level of privacy when the other partner is involved." *Id.* at 18.

7     This is unconvincing.  A romantic relationship does not give carte blanche permission under the

8     law for a partner to violate the other's privacy.

9          Plaintiff does not clearly explain which allegations support her intrusion upon seclusion

10    claim.  Liberally construed, Plaintiff appears to point to five incidents: 1) Allen investigating

11    Plaintiff's "private life" on a work computer, SAC ¶ 38; 2) Allen monitoring Plaintiff over the jail

12    security cameras, SAC ¶ 60; 3) Allen manipulating Plaintiff's thermostat, SAC ¶ 98; 4) Allen

13    forcing her way into Plaintiff's residence, SAC ¶¶ 105-120; and 5) Allen mailing her items after

14    the December 6, 2021 incident without Plaintiff's consent, SAC ¶¶ 126-130, 142-144.

15         As discussed above, Plaintiff does not specify what information Allen found about Plaintiff

16    on the work computer, so the court cannot infer that Allen's investigation would be "highly

17    offensive to a reasonable person." *See Shulman*, 18 Cal. 4th at 231.  Plaintiff has not shown an

18    "objectively reasonable expectation of seclusion or solitude" in her workplace, because she knew

19    she worked in a high-security environment, and a reasonable person would expect that someone

20    would be monitoring the security cameras in a jail. *See id.* at 232.

21         The other facts are sufficient to allege an intrusion upon seclusion claim.  In particular,

22    Plaintiff has alleged that her home is a "private place," and Allen intruded into it in a "manner

23    highly offensive to a reasonable person." *See id.* at 231.  She alleges that she did not consent to

24    Allen manipulating her thermostat, forcing her way into her home, searching through her phone

25    and interrogating her about her text messages, or mailing her unsolicited items.  A reasonable

26    person could find Allen's alleged behavior to be highly offensive.  Allen does not address these

27    allegations at all.  The court denies the motion to dismiss the intrusion upon seclusion claim.

28    //

United States District Court
Northern District of California

## VI.     CONCLUSION

- Defendant Daniel Brodie is dismissed, as Plaintiff dropped her claims against him.

- Defendants Lisa Haynes and Mary Vigil are dismissed, as Plaintiff has not made any allegations against them.

- Five Keys Defendants' motion to dismiss is granted in part and denied in part.

  o Plaintiff's section 1983 and state law claims against the Five Keys Defendants are dismissed with prejudice.  Defendants Steve Good and Melanie Fukuhara are dismissed.

  o Plaintiff's Title VII and Title IX claims against Five Keys shall go forward.

- CCSF's motion to dismiss is denied.  Plaintiff's Title VII and Title IX claims against CCSF shall go forward.

- Alameda Defendants' motion to dismiss is granted in part and denied in part.

  o Plaintiff's section 1983 claims are dismissed with prejudice except for the Fourteenth Amendment claim against Allen, which shall go forward.

  o Plaintiff's Title VII claim against Alameda County is dismissed with prejudice.

  o Plaintiff's Title IX claim against Alameda County shall go forward.

  o Plaintiff's trespass to chattel claim against Allen shall go forward.

  o Plaintiff's trespass to chattel claim against Alameda County is dismissed with prejudice.

  o Plaintiff's intrusion upon seclusion claim against Allen shall go forward.

Judgment shall be entered in favor of Daniel Brodie, Lisa Haynes, Mary Vigil, Steve Good, Melanie Fukuhara, and Gregory Ahern against Plaintiff.

Remaining Defendants shall file answers by November 19, 2024.  The Initial Case Management Conference is set for December 4, 2024 at 01:30 PM in Oakland, - Videoconference Only. This proceeding will be held via a Zoom webinar.  Parties can find the Zoom link to Judge Ryu's virtual Zoom courtroom at: https://cand.uscourts.gov/judges/ryu-donna-m-dmr/.  All parties shall jointly file one case management statement by November 27, 2024.  The court refers Plaintiff to the link entitled "Representing Yourself" on the Court's website, located at

https://cand.uscourts.gov/pro-se-litigants/, as well as the Court's Legal Help Centers for unrepresented parties. Parties may schedule an appointment by calling 415-782-8982 or emailing FedPro@sfbar.org.

 

**IT IS SO ORDERED.**

Dated: October 29, 2024

_____
Donna M. Ryu
Chief Magistrate Judge

United States District Court
Northern District of California

31